COMMONWEALTH *vs.* RICHARD H. LIEBMAN.

MIDDLESEX. OCTOBER 5, 1979. — JANUARY 31, 1980.

PRESENT: HENNESSEY, C.J., BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Practice, Criminal,* Disclosure of evidence before Federal grand jury, Amendment, Grand jury proceedings, Argument by counsel, Argument by prosecutor, Instructions to jury. *Pleading, Criminal,* Indictment, Amendment. *Grand Jury. Evidence,* Collateral matter, Judicial discretion, Cross-examination.

Remand of a criminal case was deemed appropriate where the defendant had sought, by a proceeding in a Federal court, and been denied access to the Federal grand jury testimony of the two principal witnesses against him, both of whom admitted at trial that they had lied to the Federal grand jury; on remand, the district attorney was to take appropriate steps to secure the minutes and, if he failed to obtain them, the indictment was to be dismissed with prejudice. [673-676]

At the trial of a defendant charged with conspiracy to commit armed robbery of a bank, there was no error in the allowance of a motion to amend the indictment to change the termination date of the alleged conspiracy from the date of the robbery to a date some two weeks later. [676]

At a criminal trial, the defendant was not prejudiced by the prosecutor's introduction in evidence of certain documents obtained through the use of grand jury subpoenas after the defendant had been indicted where all of the documents could have been obtained by trial sub-

poenas, the defendant was made aware of the evidence well in advance of trial, and the evidence was peripheral at most. [676-677]

At a criminal trial, the judge did not abuse his discretion in excluding evidence offered by the defendant which was intended merely to contradict a witness on a collateral matter. [677]

At a criminal trial, the judge did not err in excluding, on cross-examination of a witness who had testified to a meeting at which the defendant was carrying an envelope, a question as to whether she had mentioned the envelope to the grand jury or the police where it was not shown that the envelope was important or that the witness's attention was drawn to it on the occasions of her prior statements. [677-678]

There was no merit to a defendant's contentions that the judge at a criminal trial erred in preventing defense counsel from offering a definition of reasonable doubt in his summation or in failing to correct a misstatement of the evidence in the prosecutor's closing argument. [678-679]

At a criminal trial, there was no error in the judge's refusal to give a cautionary instruction on accomplice testimony. [679]

INDICTMENT found and returned in the Superior Court on June 9, 1977.

The case was tried before *Dimond*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*William P. Homans, Jr.* (*Sandra G. Forman* with him) for the defendant.

*William L. Pardee*, Assistant District Attorney, for the Commonwealth.

BRAUCHER, J. Pursuant to G. L. c. 278, §§ 33A-33G, the defendant appeals from a conviction of conspiracy to commit armed robbery of a bank while masked or disguised. He was sentenced to imprisonment for a term not exceeding ten years nor less than seven years. We transferred the appeal from the Appeals Court to this court on our own motion. Because the defendant has been denied access to the Federal grand jury testimony of the two principal witnesses against him, we remand the case for further proceedings. We also pass on his other assignments of error.

The principal prosecution witness was Milton Schnapf, also known as David Feathers, who testified to the follow-

ing facts. The defendant, a Massachusetts attorney, performed legal services for Schnapf and participated in Schnapf's business operations, including the operation of a number of fast food restaurants. Early in 1975, at the defendant's instigation, Schnapf added Stanley Ulatowski, a paroled bank robber, to the payroll of one of the restaurants. The three planned a bank robbery, which was carried out on February 26, 1975, by Ulatowski and two other men, Griffin and Santangelo. During the robbery Schnapf was in the office of the manager of the bank.

The other major witness for the prosecution was Deborah Hahn, manager of one of Schnapf's restaurants, who was having an affair with Schnapf. She and Schnapf testified that she was informed of the robbery plan to provide Ulatowski with an alibi. Both also testified to meetings and conversations with the defendant before and after the robbery.

Apart from the testimony of these two witnesses, there was no case against the defendant. None of the three bank robbers testified. Schnapf and Hahn testified under promises that they would not be subjected to State prosecution. Schnapf had pleaded guilty to a Federal crime for his part in the robbery, and had been released from prison after serving four months and seven days.

We consider first the denial of the defendant's efforts to secure the Federal grand jury minutes. We then consider his other assignments of error, and conclude that there is no reversible error apart from the problems posed by the Federal grand jury minutes.

1. *The Federal grand jury minutes.* Ulatowski was arrested the week after the robbery; he was tried for the robbery in a Federal court, but was found not guilty. Schnapf fled to Florida on March 9, 1975, leaving his restaurants under the control of the defendant. Beginning on March 11, 1975, Hahn testified before a Federal grand jury. Later Schnapf and the defendant testified before the Federal grand jury, and the defendant was informed that he was a "target." The investigation by the Federal grand jury ceased early in 1977, without the return of a Federal indict-

ment against the defendant, and the State indictment now before us was returned in June, 1977.

The defendant sought access to the Federal grand jury minutes by a proceeding in the Federal court, but was denied access to anything but his own testimony. Thereafter he sought access to the Federal grand jury testimony of Schnapf and Hahn through a second proceeding in the Federal court and a variety of motions in the State court, including finally a motion to dismiss the indictment. All were unsuccessful. At trial both Schnapf and Hahn admitted that they had lied to the Federal grand jury.

The defendant argues that the Federal grand jury testimony of Hahn and Schnapf contains exculpatory evidence, and that his conviction was obtained in violation of his constitutional rights under *Brady* v. *Maryland*, 373 U.S. 83 (1963). We need not rule on this contention at this stage. It is clear that, if the testimony had been given before a State grand jury, the defendant would have been entitled to it under our law; a Federal statute would have required the same result if all proceedings had been Federal. *Commonwealth* v. *Stewart*, 365 Mass. 99, 105-108 (1974). 18 U.S.C. § 3500 (1976). Cf. Mass. R. Crim. P. 14, 378 Mass. 874, effective July 1, 1979. The introduction of two sovereignties creates a potentiality for unfairness which would need correction if realized in practice. Cf. *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 660-661 (1979) (subversion of defendant's discovery by prosecutor); *Murphy* v. *Waterfront Comm'n*, 378 U.S. 52, 55 (1964) (self-incrimination of witness "whipsawed" between State and Federal law). In a variety of situations such unfairness has been avoided by assimilation of State and Federal proceedings. *Id.* at 79 (Federal prosecutor may not use against witness testimony compelled by State). *Elkins* v. *United States*, 364 U.S. 206, 223 (1960) (evidence obtained by unconstitutional State search not admissible in Federal trial). *Commonwealth* v. *Cepulonis*, 374 Mass. 487, 493-495 (1978) ("same evidence" test determines whether Federal jeopardy bars State prosecution). We think the same course is appropriate here.

Ordinarily the prosecutor's obligation to disclose information is limited to that in the possession of the prosecutor or police. See *Commonwealth* v. *Campbell,* 378 Mass. 680, 702 (1979). The defendant must apply for the production of grand jury minutes by motion. *Commonwealth* v. *Stewart,* 365 Mass. 99, 105-106 (1974). Cf. *Commonwealth* v. *Lewinski,* 367 Mass. 889, 902 (1975) (statements of prosecution witness). Where the motion is allowed, however, we think cooperation between State and Federal prosecutors is and should be common enough so that the burden of securing Federal cooperation should be placed on the State prosecutor rather than on the defendant. On remand of the present case, the district attorney is to take whatever steps are appropriate to secure the minutes in question; if he fails to do so, the indictment is to be dismissed with prejudice.

Under Federal law the release of Federal grand jury minutes in connection with a State judicial proceeding apparently requires a Federal court order. Fed. R. Crim. P. 6(*e*)(2)(C)(*i*). We of course cannot decide when such an order should be issued, but we note that there is Federal authority for such an order. *Wisconsin* v. *Schaffer,* 565 F.2d 961, 965-967 (7th Cir. 1977). Cf. *Douglas Oil Co.* v. *Petrol Stops Northwest,* 441 U.S. 210 (1979) (disclosure in connection with civil action in a different Federal district); *Matter of Disclosure of Testimony Before the Grand Jury,* 580 F.2d 281 (8th Cir. 1978) (disclosure for State Bar and judicial discipline); *In re Special February 1971 Grand Jury* v. *Conlisk,* 490 F.2d 894 (7th Cir. 1973) (disclosure to police department for disciplinary hearing); *Doe* v. *Rosenberry,* 255 F.2d 118 (2d Cir. 1958) (disclosure for bar discipline). But cf. *In re Grand Jury Proceedings,* 580 F.2d 13 (1st Cir. 1978) (denial of disclosure not appealable). If the Federal court in the present case refuses to send to the State court the requested transcripts of the Federal grand jury testimony of Schnapf and Hahn, presumably the refusal rests on adequate reasons of security. In that event, the State indictment of the defendant is to be dismissed with prejudice.

Cf. *Jencks* v. *United States*, 353 U.S. 657, 672 (1957) (dismissal of Federal prosecution); *Commonwealth* v. *Manning*, 373 Mass. 438 (1977) (dismissal of State prosecution because of misconduct of Federal agent).

If access to the Federal grand jury minutes is permitted by a Federal court, any restrictions placed upon that access, such as a requirement that the State judge make a preliminary examination in camera, must of course be scrupulously observed. Otherwise, the case should proceed as if State grand jury minutes were involved. If the minutes might create a reasonable doubt that did not otherwise exist, a new trial may be appropriate. See *Commonwealth* v. *DeChristoforo*, 371 Mass. 26, 34-38 (1976); *Commonwealth* v. *Hall*, 369 Mass. 715, 724-728 (1976). If they do not, the verdict and judgment may be permitted to stand.

2. *Amendment of indictment.* There was no error in the allowance of the Commonwealth's motion to amend the indictment to change the termination date of the alleged conspiracy from February 26, 1975, the date of the robbery, to March 11, 1975. The duration of the conspiracy was not an essential element of the crime. G. L. c. 277, §§ 20, 79. See *Commonwealth* v. *Jervis*, 368 Mass. 638, 643-644 (1975). The amendment made no change of substance. See *Commonwealth* v. *Sitko*, 372 Mass. 305, 307-308 (1977); *Commonwealth* v. *Snow*, 269 Mass. 598, 606 (1930). The defendant was not prejudiced in his defense. See G. L. c. 277, § 35A; *Commonwealth* v. *Benjamin*, 358 Mass. 672, 678-679 (1971). The test for the admissibility of statements of coconspirators is whether they were made during the course of and in furtherance of the conspiracy, not whether they were made during the time alleged in the indictment. *Commonwealth* v. *French*, 357 Mass. 356, 379-380 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts*, 408 U.S. 936 (1972). *Commonwealth* v. *Beal*, 314 Mass. 210, 227 (1943).

3. *Improper use of grand jury.* After the indictment of the defendant, the prosecutor used grand jury subpoenas to obtain documents later introduced in evidence at the trial.

We agree with the defendant's contention that it is improper to use the grand jury for the purpose of preparing an already pending indictment for trial. *United States* v. *Doe,* 455 F.2d 1270, 1273 (1st Cir. 1972). But we need not examine closely the prosecutor's claim that the grand jury had a purpose of investigating other crimes. See *Commonwealth* v. *Donahue,* 369 Mass. 943, 948-949, cert. denied, 429 U.S. 833 (1976). Assuming, without deciding, that the grand jury was misused for discovery, we think there was no prejudice to the defendant. All of the evidence in question could have been obtained by trial subpoenas, and the defendant was made aware of it well in advance of trial. The evidence was peripheral at most. Thus the prosecutor obtained no unfair advantage. See *Commonwealth* v. *Gilbert,* 377 Mass. 887, 895-896 (1979).

4. *The letter from "Stanley".* Schnapf's stepsister testified to a conversation with the defendant shortly before the trial, in which the defendant suggested that prosecution witnesses might be injured or killed. The defendant showed her, she said, a letter from "Stanley" — presumably Stanley Ulatowski, the bank robber — which said, "Richard, I will do anything I can for you." On cross-examination she was shown a letter, and said it did not appear to be the same letter. The defendant later tried to authenticate the letter and offered it in evidence, but the judge excluded it. The letter read, "Hello Rich, Everything the pig's are saying about you is *UNTRUE,* If there's anything I can do, let me know. Stanley." There was no error. Contradiction of the testimony of the witness on a collateral matter was a matter of discretion, and no abuse of discretion is shown. *Commonwealth* v. *Clifford,* 374 Mass. 293, 299-300 (1978). *Commonwealth* v. *Abbott Eng'r, Inc.,* 351 Mass. 568, 576 (1967).

5. *Limitation of cross-examination.* On direct examination Hahn testified to a meeting after the robbery at which the defendant was carrying an envelope. On cross-examination the judge excluded a question whether she had mentioned the envelope to the grand jury or the police. There

was no error.   It was not shown that the envelope was important or that the witness's attention was drawn to it on the occasions of her prior statements.   *Commonwealth* v. *Hawkins,* 3 Gray 463, 465 (1855).   There was also no error during cross-examination in excluding a question in the form, "If there was testimony to the effect that . . . , you would say that was incorrect?"   *Olson* v. *Ela,* 8 Mass. App. Ct. 165, 169-170 (1979).

6. *Arguments of counsel.*   The defendant complains that he was prevented from offering a definition of reasonable doubt in the summation to the jury by his counsel.   He was not prevented from pointing out to the jury the doubts that could be found in the evidence in the case, and he did so at length.   Contrast *Bloom* v. *Town Taxi, Inc.,* 336 Mass. 78, 80 (1957).   The judge has considerable latitude in his choice of methods to prevent, as well as to correct, improper argument of counsel. *Commonwealth* v. *Watson,* 377 Mass. 814, 823 (1979).   *Commonwealth* v. *Anderson,* 245 Mass. 177, 186-187 (1923).

The defendant also complains of the judge's failure to correct a misstatement of the evidence in the prosecutor's closing argument.   Hahn had testified that in a conversation with the defendant and Ulatowski's lawyer, the day before she first testified before the Federal grand jury, she had told the false alibi for Ulatowski as the truth, and that the lawyer had accepted it and urged her to continue to tell the truth.   The lawyer testified that at that point Hahn had told him the alibi was false.   Defense counsel, in his summation, emphasized the discrepancy.   The prosecutor, in his summation, summarized Hahn's testimony about the conversation and argues that "there was no inconsistency" between the two accounts, omitting to mention the contrary testimony of the lawyer.   The defendant objected, and the judge immediately said, "Once again, we have to rely on the jury's collective memory as to the accuracy of the testimony."   Later, out of the hearing of the jury, the judge indicated to counsel that his notes supported defense counsel's memory of the testimony; the judge refused to have the tes-

timony on a "collateral point" read to the jury, but offered to instruct the jury again that their collective memory controlled. He did so. We conclude that there was no abuse of his discretion. See *Commonwealth* v. *Watson, supra.*

7. *Instructions on accomplice testimony.* There was no error in the judge's refusal to give a cautionary instruction on accomplice testimony. *Commonwealth* v. *Watkins,* 377 Mass. 385, 388-389 (1979), and cases cited. *Commonwealth* v. *French,* 357 Mass. 356, 395-396 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts,* 408 U.S. 936 (1972).

8. *Conclusion.* Apart from the question of access to Federal grand jury minutes, there was no error. The case is remanded to the Superior Court for further proceedings with respect to the Federal grand jury minutes in accordance with this opinion.

*So ordered.*