COMMONWEALTH *vs.* JOSEPH ARTHUR COTE.

Bristol. March 5, 1990. - July 5, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Practice, Criminal,* Grand jury proceedings. *Grand Jury. Subpoena. Constitutional Law,* Search and seizure, Privacy. *Privacy. Search and Seizure,* Expectation of privacy.

A prosecutor's use of a grand jury subpoena to obtain certain records, which were not presented to the grand jury in any form but were introduced by the prosecution at the trial of indictments later returned against the defendant, while improper, did not require reversal of the defendant's convictions in the absence of any prejudice to him or any serious impairment of the grand jury process. [831-833]

In the circumstances, a criminal defendant had no reasonable expectation of privacy, under either the Fourth Amendment to the United States Constitution or art. 14 of the Massachusetts Declaration of Rights, in the records of messages received for him by a telephone answering service. [833-836]

INDICTMENTS found and returned in the Superior Court Department on June 25, 1985.

A pretrial motion to suppress evidence was heard by *George Jacobs,* J., and the cases were tried before *William H. Carey,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Carlo Obligato,* Committee for Public Counsel Services, for the defendant.

*Elspeth B. Cypher,* Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. On March 13, 1987, a jury of the Superior Court in Bristol County found the defendant, Joseph Arthur Cote, guilty of one count of breaking and entering a building in the daytime with intent to commit larceny, two counts of

breaking a safe, and one count of larceny of goods with a value of more than $100. The defendant appeals his convictions. He alleges that the prosecutor's failure to present to the grand jury certain evidence obtained through a grand jury subpoena requires that his convictions be reversed and the indictments be dismissed. We affirm.

The petit jury were warranted in finding the following facts. On the morning of Sunday, November 11, 1984, two safes located inside Frem's Jewelers (Frem's) in New Bedford were drilled open and emptied of approximately $72,000 worth of merchandise. On December 12, 1984, the Fall River police department received information that the defendant had some of the merchandise which had been stolen from Frem's. In response, the Fall River police department undertook a surveillance of an apartment where the defendant occasionally stayed.

As a result of the surveillance, Fall River police officers arrested the defendant and seized a briefcase he had been carrying. The briefcase contained jewelry, identified by the manager of Frem's as some of the merchandise that had been stolen, a set of lock picks, and a wedding invitation bearing the name of Robert Dubois. The manager of Frem's, Wayne Dubreuil, told police that he had developed a business relationship involving the sale of gold with Dubois over the past several years. After further investigation, Fall River police officers arrested Dubois in February, 1985.

Dubois told the police he had known the defendant for approximately two years, and that, shortly before the break-in at Frem's, the defendant had asked Dubois if he knew of an "easy place to break into." Dubois suggested Frem's. After examining the jewelry store, the defendant told Dubois that the defendant, Alan Gaudreau, and David Hutchins "would take care of it."[1] Dubois helped the defendant prepare for the break-in, but was not present when it occurred.

---

[1]Gaudreau and Hutchins were arrested and indicted as codefendants with the defendant. Hutchins pleaded guilty, and Gaudreau's case was still pending at the time of the defendant's trial. Neither Gaudreau nor Hutchins takes part in this appeal.

On the afternoon of the break-in, Dubois went to the apartment of Patricia Sleeper, the defendant's girl friend. The defendant, Gaudreau and Sleeper were present; Hutchins arrived later. Jewelry was spread across a table and the floor of a room in the apartment. The group sorted and inventoried the jewelry, and assessed its value. Dubois recognized some of the jewelry boxes in the apartment as those used in Frem's. The group then divided the jewelry amongst themselves.

Prior to Dubois's arrest, the office of the district attorney for the Bristol district had issued a grand jury subpoena on January 9, 1985, to Allied Answering Service (Allied) for "all records, notes, memoranda or other documents maintained and relating to messages received, messages delivered, telephone calls received and telephone calls made in connection with a customer account for a Joseph Arthur Cote, Jr., Arthur Cote or Art Cote." Although Cote did not have an account with Allied, one of Allied's clients, Leonard Martin, had instructed Allied to take messages for the defendant on the Leonard Martin Insurance Co. telephone. Allied employed operators who, if a client was unavailable to answer the telephone, would take a message from the caller and relay the message to the client at a later time. Allied complied with the grand jury subpoena by delivering to the New Bedford police department its business records, which consisted of paper message slips 1½" x 2" in size. Each of these slips contained the name of the account for which a particular message had been taken, the time and date of the message, and the message itself. Allied considered these records to be confidential.

On June 24, 1985, the district attorney appeared before a Bristol County grand jury seeking indictments of the defendant in connection with the break-in at Frem's. The district attorney presented as witnesses Dubois and Detective Baron of the New Bedford police department, both of whom testified substantially in accord with the factual situation we have described. The district attorney did not present to the grand jury the telephone message slips which Allied had sub-

mitted to the district attorney pursuant to the grand jury subpoena. No mention of these records was made in the testimony before the grand jury. The grand jury returned indictments against the defendant for the offenses previously set forth.

During pretrial discovery, defense counsel became aware that the district attorney had obtained Allied's business records concerning the defendant's telephone messages by use of a grand jury subpoena, and that these records had not been presented to the grand jury. The defendant moved that these records be suppressed at trial, alleging that the district attorney's actions with regard to the records "misused the Grand Jury's subpoena powers, and violated the defendant's rights under the Fourth Amendment to the United States Constitution; his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution; and Article Fourteen of The Massachusetts Declaration of Rights . . . [and] improperly infringed upon the separation of powers [in] violation of Part I, Article 30 of The Massachusetts Constitution."

A hearing on the defendant's motion to suppress the records was held on January 14, 1986, January 15, 1986, and on March 11, 1986.[2] On August 12, 1986, a judge of the Superior Court denied the defendant's motion. The judge concluded that "[t]he fact that the Allied records were not utilized directly in the grand jury presentment does not support the defendant's argument of abuse of subpoena power without proof of prosecutorial intention to totally exclude the grand jury from summonsed records." Earlier, in his findings of fact, the judge had found that "[t]he issue of the good faith of the District Attorney's office in summonsing the message slips was not raised directly by either party." The judge also concluded that "the records in question were otherwise discoverable by the prosecution prior to trial under the provisions of [Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885

---

[2]The hearing also addressed motions to suppress other evidence. The rulings on these motions are not part of the defendant's appeal.

(1979).] Therefore, no purpose is to be served by exclusion of the evidence in question in the absence of clear constitutional violation or proof of egregious conduct by the government."

The trial began on March 9, 1987, and continued through March 13, 1987. The defendant was found guilty on each of the three indictments, and was sentenced to from thirteen to twenty years for the safe-breaking convictions, to be followed by a six to ten year sentence for the breaking and entering conviction.[3]

The defendant contends that the judge erred in denying his motion to suppress the telephone message records. Specifically, the defendant claims that the judge's conclusion that an abuse of the grand jury process had not been demonstrated was erroneous. Furthermore, the defendant argues that the judge's conclusion that the message records were otherwise available through a trial subpoena under rule 17 (a) (2), ignores the defendant's claim that acquisition of the records through a subpoena violates his rights under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.

The defendant directs our attention to the district attorney's failure to present the grand jury with the telephone message records. This omission on the part of the district attorney, the defendant argues, when considered in light of the fact that the message records were subsequently presented in evidence at the defendant's trial, represents an abuse of the grand jury subpoena power by the district attorney. We agree, but find that in the circumstances of this case the improper action of the district attorney did not "seriously impair" the integrity of the grand jury, and did not prejudice the defendant in the proceedings before that body. *Commonwealth* v. *McLeod*, 394 Mass. 727, 733-734 (1985).

The grand jury is "an appendage, a branch, an integral part of the court acting under the authority of the court." *Matter of Pappas*, 358 Mass. 604, 613 (1971), quoting *Grand Jurors for Worcester County for the Year 1951* v.

---

[3]The judge placed the indictment for larceny on file.

*Commissioner of Corps. & Taxation*, 329 Mass. 89, 91 (1952). "[T]he grand jury perform[s] the important task of determining whether there is probable cause to indict an accused," *Commonwealth* v. *McLeod*, *supra* at 733, thereby "protecting citizens against unfounded criminal prosecutions." *Branzburg* v. *Hayes*, 408 U.S. 665, 686-687 (1972). As a branch of the court, the grand jury's role is limited to consideration whether to indict; it may not engage in the prosecution of indictments which it has chosen to issue. See *Commonwealth* v. *Liebman*, 379 Mass. 671, 677 (1980). "The grand jury is an investigatory and accusatory body only." *Commonwealth* v. *McLeod*, *supra* at 733. See *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450 (1984).

In the present case the district attorney, without any prompting from the grand jury, used a grand jury subpoena to acquire telephone message records which were not presented to the grand jury in any form but which were presented at the trial of the defendant. Although the issue of the district attorney's good faith in obtaining the message records was not raised below, the practical effect of the district attorney's actions was to enlist the aid of the grand jury's powers, without its authorization, to further the prosecution of the case. While the powers of the district attorney in connection with a grand jury investigation are "substantial," see *In re Melvin*, 546 F.2d 1, 5 (1st Cir. 1976), they do not extend so far as to condone the unauthorized use of the grand jury subpoena power which occurred in this case. We have already held that "it is improper to use the grand jury for the purpose of preparing an already pending indictment for trial." *Commonwealth* v. *Liebman*, *supra* at 677. The fact that in the present case no indictment had issued when the subpoena in question was served does not alter the need for the strict separation of the grand jury's investigatory function and the district attorney's prosecutorial function. A district attorney should limit use of grand jury subpoenas to situations which further the grand jury's function. See *Commonwealth* v. *Seminara*, 20 Mass. App. Ct. 789, 793 (1985).

This court has recognized, however, that an impropriety in a grand jury proceeding will not invalidate the results of that proceeding unless the grand jury process has been "seriously impaired." *Commonwealth* v. *McLeod, supra* at 733. No such impairment exists in the present case. The defendant does not dispute that the testimony presented to the grand jury was sufficient to support a finding of probable cause. See *Commonwealth* v. *McCarthy,* 385 Mass. 160, 161-162 (1982) ("generally a 'court will not inquire into the competency or sufficiency of the evidence before the grand jury' "). Moreover, the absence of the telephone message records did not deprive the defendant of any exculpatory evidence. Compare *Commonwealth* v. *O'Dell, supra* at 449. In these circumstances, we find no prejudice to the defendant and no serious impairment of the grand jury process. See *Commonwealth* v. *Smallwood,* 379 Mass. 878, 888 (1980).

The defendant also claims that the judge's decision to deny the motion to suppress the telephone message records was error because they had been seized in violation of his right to privacy under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.[4] We disagree.

"The privacy interests protected under art. 14 (and the Fourth Amendment) exist when it is shown 'that a person [has] exhibited an actual (subjective) expectation of privacy,' and when that 'expectation' [is] one that society is prepared to recognize as 'reasonable.' " *Commonwealth* v. *Blood,* 400 Mass. 61, 68 (1987). Even assuming that the defendant had a subjective expectation of privacy in the telephone message records[5], we must conclude that this expectation of privacy cannot be characterized as "reasonable" under either the Fourth Amendment or art. 14.

---

[4]There is no claim that there was a violation of G. L. c. 272, § 99 (1988 ed.), the Massachusetts wiretap statute.

[5]The judge made no findings as to the defendant's subjective expectation of privacy in the telephone message records.

In *United States* v. *Miller,* 425 U.S. 435 (1976), the United States Supreme Court examined the protections of the Fourth Amendment in a factual situation analogous to that of the present case. In *Miller,* the defendant challenged the use of grand jury subpoenas to obtain banking records from his bank, claiming that he had a reasonable expectation of privacy in them. *Id.* at 437-439. The Court rejected the defendant's challenge, concluding that no legitimate expectation of privacy existed in the contents of the bank records. *Id.* at 442. "All of the documents obtained, including financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." *Id.* at 442. "The [defendant] takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." *Id.* at 443. "[T]he Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Id.* at 443.

In the present case, the defendant chose a method of receiving telephone messages in which both the defendant and any caller were well aware of the involvement of a third party. Any decision to utilize such a service to leave a message necessarily involved a voluntary conveyance of information to that third party. According to the analysis in *Miller,* therefore, the defendant, by using Allied's message service, took the risk that Allied might reveal his messages to the district attorney. In these circumstances, he cannot be said to have held a reasonable expectation of privacy in the contents of the telephone message records under the Fourth Amendment. See *id.* at 442.

Our conclusion that the defendant does not enjoy a reasonable expectation of privacy under the Fourth Amendment does not compel a similar conclusion regarding the reasonableness of the defendant's expectation of privacy under art. 14. "We have often recognized that art. 14 of the Declara-

tion of Rights does, or may, afford more substantive protection to individuals than that which prevails under the Constitution of the United States." *Commonwealth* v. *Blood, supra* at· 68 n.9. However, while we consider the issue of the defendant's reasonable expectation of privacy to be a closer question under art. 14 than under the Fourth Amendment, we conclude that the defendant cannot hold a reasonable expectation of privacy in the telephone message records in the circumstances of this case.

As we discussed earlier, the defendant chose to utilize a message service which required an Allied employee to write down the name of the caller, the time of the call, and the contents of the message. Therefore, the defendant knew that any message would be exposed to an Allied employee, as did any caller who left a message for the defendant. It may be that under art. 14 exposure of information to another party might not compel the rejection of a claim of a reasonable expectation of privacy, particularly in light of the fact that the third party here, Allied, considered the telephone message records to be confidential. However, we must also consider the fact that the defendant knew that his messages were being taken not on his own telephone line but on that of the Leonard Martin Insurance Co., one of Allied's clients. This arrangement subjected the defendant's messages to exposure, not only to the employees of Allied but also to anyone entitled to examine the telephone message records of the Leonard Martin Insurance Co.

The defendant argues that this court's opinion in *Commonwealth* v. *Blood, supra*, requires us to reverse the judge's denial of the motion to suppress. In *Blood* we addressed a situation involving the surreptitious recording of conversations held in private homes in which at least one party to the conversation was unaware of the fact that their words were being recorded. In the present case, both the defendant and any callers who left a message for him at Allied intended that their words be recorded. Therefore, our analysis in *Blood* does not apply to the facts of this case. In the circumstances of this case, the defendant reasonably could not ex-

pect the contents of his telephone messages to remain private. See *Commonwealth* v. *Pratt, ante* 647 (1990).

We conclude that the defendant did not retain any constitutionally recognizable privacy interests in the telephone message records. Therefore, as noted by the judge below, the records were obtainable by subpoena pursuant to Mass. R. Crim. P. 17 (a) (2). The judge's denial of the defendant's motion to suppress the telephone message records was correct. The defendant claims no other error at trial. Accordingly, the convictions are affirmed.

*Judgment affirmed.*