Billings, Thomas P., J.
On September 11, 2008 I heard evidence on the defendant’s Motion to Suppress His Recorded Telephone Calls from Suffolk County Jail. For the reasons that follow, the motion is ALLOWED, on the terms specified in the Order below.
FINDINGS OF FACT
Based on the credible evidence, I find the following facts.
1. In the late hours of March 18 or the very early hours of March 19, 2006 Corey Davis was shot in Cambridge. He died of multiple gunshot wounds on March 19. The defendant (“Bright”) and a codefendant, Remel Ahart, are charged with his murder.
2. The grand jury heard evidence over nine days between May 4 and June 29, 2006. The grand jurors were recalled and returned indictments against Bright and Ahart in August 2006.
3. Meanwhile, on June 22, 2006, arrest warrants issued out of the Cambridge District Court for Bright and Ahart. On June 28 Bright, who had been out of state on personal business, surrendered himself to the warrant. Since that time or shortly thereafter, he has been held without bail in the custody of the Suffolk County Sheriff, in the Nashua Street Jail.
4. As part of the intake process at Nashua Street, Bright was interviewed on June 30 by a caseworker named Kendra Burke. The interview proceeded from a written Intake Questionnaire (Hearing Ex. 1), which Burke completed based on Bright’s oral answers to her questions. At the end of the interview, Bright signed the Questionnaire in Burke’s presence.
5. Among other answers, Bright responded that he could read and write.[1] The Questionnaire also indicates, and I find, that Bright was provided with a copy of the Sheriffs Inmate Guide.
6. The Inmate Guide (Ex. 2) includes some rules concerning use of the inmate telephone system, with *234 the following advisory: “The Department records all inmate telephone conversations, except calls to attorneys and legal services organizations.”
7. When using the telephones,[2] an inmate or detainee is first required to select between English and Spanish. Then, he is prompted to punch in a unique personal identification number (“PIN”). Then he is asked to state his name; this is recorded. The number is then dialed, the caller being advised to continue to hold. When the call connects, there is a warning that is audible to both the caller and the recipient. I listened to eleven of the recordings to ascertain what the warning consisted of,[3] and heard five different variants, as follows.
A. “Hello, this is a collect call from [caller’s recorded name], an inmate from the Suffolk House of Correction. To accept charges, press _. To refuse charges, press_. This call is being recorded, and may be subject to monitoring. Thank you for using Evercom.”
B. “Hello, this is a collect call from [caller’s recorded name). This call is being recorded, and may be subject to monitoring. Thank you for using Ever-com.”
C. “Hello, this is a collect call from [caller’s recorded name], an inmate from the Suffolk County Jail. To proceed with this call, say Hello after pressing zero. This call is being recorded, and is subject to being monitored. If this is an attorney-client conversation, please hang up and call 617-961-6820. Once again, the phone call is being recorded. Thank you for using Evercom.”
D. “Hello, this is a collect call from [caller’s recorded name], an inmate from the Suffolk House of Correction. To accept charges, press _. To refuse charges, press_. This call is being recorded, and is subject to being monitored. If this is an attorney-client conversation, please hang up and call 617-961-6820. Once again, the phone call is being recorded. Thank you for using Evercom.”
E. “Hello, this is a collect call from [caller’s recorded name]. This call is being recorded, and is subject to being monitored. If this is an attorney-client conversation, please hang up and call 617-961-6820. Once again, the phone call is being recorded. Thank you for using Evercom.”[4]
After the warning, the parties begin their conversation.
8. The Nashua Street system is “populated” with a list of attorney telephone numbers. Initially, this list came from the “red book” (the Massachusetts Lawyers Diary and Manual). Since 2005 (i.e., for the entire time that Bright has been held), the list has been downloaded from the Board of Bar Overseers database. If the caller dials a number that the system recognizes as an attorney’s, the call is not recorded or monitored. There is no allegation and no evidence that any attorney-client calls were recorded in Bright’s case.
9. The Suffolk Sheriff has promulgated Policy S482, effective January 2000 and revised in June 2006. The revised policy (Ex. 3) covers various matters relating to telephone access, the mechanics of the assignment and use of PINs, how attorney-client calls are to be handled, and other matters. There is also the following:
VI. Access to and Retention of Recordings
1. The Sheriff or designee will authorize specific staff to listen to live and recorded inmate telephone conversations, excluding privileged attorney calls, for the purpose of maintaining the security, good order or discipline of the facility, and prevention of criminal activity within or outside of the facility.
2. Authorized staff will be trained on the operation of the listening workstation and the purposes for which it is to be used.
VII. Disclosure
1. Information obtained from inmate telephone calls can be disclosed only as reasonably necessary to promote legitimate operational standards, law enforcement or public safety purposes.
2. Copies of inmate phone call logs and recorded phone calls will be provided in response to legally issued subpoenas or court orders.][5]]
10. Policy S482 was promulgated and implemented by the Sheriff on his/her own initiative, not at the direction or request of any prosecutorial authority. Calls are recorded, and are sometimes monitored, for reasons of institutional security and good order, not for investigation or evidence-gathering in pending criminal cases.
11. It was stipulated, and I find, that as far as the Sheriffs Department and the District Attorney’s office are or ever were aware, there is nothing on the recordings of Bright’s calls that suggests that Bright was a threat to the order or security of the jail, or was planning or participating in criminal activity within or outside the jail. Both sides agree, therefore, that paragraph VII. 1 of Policy S482 is not implicated in Bright’s case.
12. As of February 2007, no agent of the Commonwealth had any particularized knowledge that any of Bright’s recorded calls would contain material that was inculpatory, exculpatory, or otherwise relevant to the issues in the criminal case, or that indicated that Bright was a threat to the order or security of the jail, or was planning or participating in criminal activity within or outside the jail.
13. On February 5, 2007 a staff member of the Middlesex District Attorney’s office faxed a subpoena duces tecum (Ex. 7) to the Suffolk County Sheriffs Office, Keeper of Records. The Keeper was directed to appear at the Middlesex Superior Court on February *235 28, 2007 at 9:00 a.m., and to bring with him or her all available logs and recordings of calls made by Bright, from March 18, 2006 to the present, excluding attorney calls.
14. When the fax came in, the Sheriffs Department assigned the matter to Deputy Jonathan Spinale of the Sheriffs Investigative Unit. Per standard operating procedure, Spinale sent the subpoena to the office of the Sheriff s General Counsel for review. Upon receiving the approval of the general counsel, Spinale on February 12 (also per S.O.P.) sent copies of the recordings — 454 calls in all — directly to the District Attorney’s office, which in due course turned copies over to the defense.
15. The Sheriffs Department regards any subpoena issued by a District Attorney’s office as valid, and will accept a fax in lieu of in-hand service. It receives between thirty and fifty prosecutorial subpoenas for jail call recordings each month. Representatives of the Sheriff rarely go to court in connection with such subpoenas. It was the understanding of both the Sheriffs Department and the District Attorney’s office in this case that the requested materials could be provided directly to the D.A. in lieu of an appearance by the Keeper of Records in court.
16. There was a hearing scheduled in Bright’s and Ahart’s cases for February 28, but it was (according to the docket) to be a non-evidentiaiy hearing on discov-eiy matters, commencing at 2:00 p.m. (not 9:00 a.m. as stated in the subpoena). The court session was in fact a veiy brief, non-evidentiaiy discussion on the record of discoveiy motions. The transcript (exclusive of caption and index) runs to three and one-half pages. No one present mentioned a witness, the Sheriff, jail calls, or indeed any discovery issue in particular; just that discoveiy compliance was taking some time and an extension to the tracking order deadlines might be necessary.
17. It seems apparent, and I find, that there was never any contemplation, on anyone’s part, that the Keeper of Records would testify, or that his documents would be offered in evidence, at the February 28 hearing, or at any other hearing prior to trial.
18. The Commonwealth did, however, have a purpose in subpoenaing the records, that was at least tangentially related to the February 20 hearing: it anticipated introducing jail call recordings at trial (assuming they contained relevant material), and wanted to ensure that the recordings were obtained and turned over to the defense, early enough to avoid prejudice or disruption of the trial.
DISCUSSION
Bright advances three arguments in favor of suppression of the jail call recordings:
1.That the Sheriffs release of the recordings to the Commonwealth violated Policy S482;
2. That the Commonwealth’s manner of obtaining the recordings violated Mass.R.Crim.P. 17(a)(2) and the protocol mandated by Commonwealth v. Lamp-ron, 441 Mass. 265, 268-71 (2004), and thus exceeded the prosecution’s subpoena power; and
3. That the Commonwealth’s acquisition of the recordings violated Bright’s constitutional rights to privacy and due process secured by the Fourth and Fourteenth Amendments to the United Sates Constitution and by Articles 1, 12 and 14 of the Massachusetts Declaration of Rights.
These arguments are considered in turn, as are the Commonwealth’s responses.
1. Policy S482
Bright’s motion as originally filed was premised on the understanding that the Commonwealth had not subpoenaed the jail call recordings, and that the Sheriff, in turning them over, had therefore violated paragraph VII of Policy S482, permitting release of such recordings only (1) “as reasonably necessary to promote legitimate operational standards, law enforcement or public safety purposes,” or (2) “in response to legally issued subpoenas or court orders.”
As the evidence has developed, there was a subpoena, albeit one whose legality is in sharp dispute. The issue of the Sheriffs compliance with Policy S482 is thus inextricably linked with — in fact, depends upon- — the issues concerning the prosecution’s subpoena power, considered below.
The Sheriffs policy was enacted pursuant to a duly enacted regulation of the Department of Correction, 103 C.M.R. 948.10, which provides that telephone usage by persons held in a county correctional facility (see 103 C.M.R. 900.01 & 901.01) shall be governed by “[w]ritten policy and procedure.” The DOC regulation requires that the Sheriffs policy cover such matters as hours of use, length of calls, payment of charges, and receipt of emergency calls. Monitoring or recording of calls are not specifically mentioned in the DOC regulation. Nonetheless, I read the general requirement that “[w]ritten policy and procedure shall govern inmate access to a public telephone” to require that, if there is to be monitoring and/or recording, there must also be a written policy on these subjects.
Policy S482 is not, so far as appears in the evidence, a formally enacted regulation. Nonetheless, it may not be ignored.
Although courts give the force of law only to formal agency regulations, administrative agencies must abide by their own internally promulgated policies. This is true regardless whether the policy exists pursuant to a formal rule, or an informal guideline.
Commissioner of Revenue v. BayBank Middlesex, 421 Mass. 736, 739 (1996).
As discussed at length below, I believe and hold that the subpoena to which the Sherif responded was not *236 a “legally issued subpoenal ].” In producing the recordings, therefore, the Sheriff violated Policy S482.
Whether or not a third party’s violation of its own internal agency policy might ever be ground for suppression in a criminal case is an interesting question, but one that I need not reach in this case, because I hold (below) that the unlawful subpoena is by itself ground for relief. The sole relevance to this decision of Policy S482, section VII lies in the fact that the Commonwealth could not have obtained the recordings without a subpoena or court order.
2. The District Attorney’s Subpoena Power
The prosecutor’s power to subpoena witnesses and/or documents has two sources: G.L.c. 277, §68, and Mass.R-Crim.P. 17(a).
a. G.L.c. 277, §68
Chapter 277, §68, last amended over one hundred years ago, provides as follows:
The attorney general and district attorneys may issue subpoenas under their hands for witnesses to appear and testify on behalf of the commonwealth, and such subpoenas shall have the same force, and be obeyed in the same manner, and under the same penalties, in case of default, as if issued by the clerk of the court.
By its plain terms, section 68 may be utilized, in a criminal case, only by the prosecution. Subpoenas are issued ex parte; there is no provision for review or involvement by the Court. This is the time-honored method by which the Commonwealth compels the appearance of witnesses, and the production of documents and other tangible evidence, before a grand juiy, at trial, or in other court proceedings (e.g., occasionally, an evidentiary motion to suppress).
By its express language, section 68 is to be used to compel “witnesses to appear and testify on behalf of the commonwealth.” That the witness may be compelled to bring documents or things does not seem to be in dispute,[6] but a witness he must be — that is, his testimony, or at least his documents, must be summoned for evidentiary use in a hearing. The statute is not, in other words, a general discovery tool. Its use as such is a practice the Supreme Judicial Court, quite awhile ago, “emphatically disapprove^].” Commonwealth v. Smallwood, 379 Mass. 878, 887 (1980) (condemning prosecution’s use of a section 68 subpoena to summons a witness “for interview on a day on which the case was not before the court”).
More recent, and more specific, is the SJC’s observation that while section 68 empowers the Commonwealth to utilize grand jury subpoenas to “obtain evidence prior to trial without the knowledge or participation of a criminal defendant, ... it would be unethical for the Commonwealth to use this statutory authority for any purpose other than to present a witness or evidence to a court or grand jury.” Commonwealth v. Mitchell, 444 Mass. 786, 798 n.17 (2005), citing Smallwood and Commonwealth v. Cote, 407 Mass. 827, 832 (1990) (holding that district attorney may not use a grand jury subpoena except to place evidence before the grand jury); see also Commonwealth v. Liebman, 379 Mass. 671, 677 (1980) (to the same effect).[7]
The Commonwealth suggests that these seemingly unambiguous pronouncements are undercut by a dictum in Commonwealth v. Lampron, 441 Mass. 265 (2004). There, the SJC held that a subpoena duces tecum may only issue, prior to trial, upon a judge’s allowance of a motion, made under Mass.R.Crim.P. 17(a)(2) and supported by an affidavit demonstrating “that the documentary evidence sought has a ‘rational tendency to prove or disprove] an issue in the case.’ ” 441 Mass. at 269-70 (citations omitted; bracketed language inserted in the Lampron opinion). The SJC gave the following consideration to the prosecution’s argument that the defendant’s motion was defective because the supporting affidavit was signed by defense counsel, who did not have personal knowledge of all of the facts attested to:
We note, however, that a subpoena for documents in the possession of a nonparty may be issued by a prosecutor over his or her own signature. See G.L.c. 277, §68. In light of that fact, we are disinclined to give a hypertechnical reading to the requirement that an affidavit submitted by defense counsel in support of a defendant’s motion for a summons for documentary evidence be made on personal knowledge, and conclude that the affidavit may contain hearsay.
Id. at 270-71 (emphasis in original).
I do not read this language as endorsing the use of section 68 as a unilateral, post-indictment, pre-trial discovery tool for prosecutors. Were there any confusion on the point, it should have been dispelled by Mitchell supra, decided fifteen months later. All the court said in Lampron is apparent from the statutory language: a section 68 subpoena does not require a motion or a court order. Mitchell and the other cases discussed above[8] make clear, however, that a section 68 subpoena may not be used “for any purpose other than to present a witness or evidence to a court or grand jury.” Mitchell 444 Mass. at 798 n.17.
Returning to the present case: it seems clear, and I have found, that the District Attorney’s subpoena duces tecum to the Suffolk Sheriff was intended, not to secure the attendance of a witness or the production of documents for use at the February 28 hearing, but to obtain documents for possible use at a trial as yet unscheduled. The subpoena’s purported command that the witness appear in court on a day when there was a matter scheduled in the case, and there “to give . . . evidence,” was mere window-dressing. Both the prosecutor and the Sheriffs staff understood this, and the documents accordingly were delivered, not to the Court, but to the D.A.’s office. This was, in other *237 words, the practice expressly disapproved in the Lieb-man, Smallwood, Cote, and Mitchell cases — post-indictment, pre-trial discoveiy by means of a subpoena.
I have credited testimony that the Suffolk Sheriffs department receives a large number of subpoenas from District Attorneys’ offices each month; that it views them as valid, and routinely complies; and that the Sheriffs staff very rarely deliver documents to a courthouse; almost always, they send them to the requesting D.A.’s office. Such may well, in fact, be the standard of practice statewide, and I impute no nefarious intent to the Commonwealth. It is nonetheless impossible to square this practice with admonitions in Smallwood and Mitchell On the facts found, therefore, I hold that this was not a lawful subpoena under G.L.c. 277, §68.
b. Mass.R.Crim.P. 17(a)
Rule 17(a) — the other source of subpoena power in a Massachusetts criminal case — reads as follows;
(a) Summons.
(1) For Attendance of Witness; Form; Issuance. A summons shall be issued by the clerk or any person so authorized by the General Laws. It shall state the name of the court and the title, if any, of the proceeding and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein.
(2) For Production of Documentary Evidence and of Objects. A summons may also command the person to whom it is directed to produce the books, papers, documents, or other objects designated therein. The court on motion may quash or modify the summons if compliance would be unreasonable or oppressive or if the summons is being used to subvert the provisions of Rule 14. The court may direct that books, papers, documents, or objects designated in the summons be produced before the court within a reasonable time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents, objects, or portions thereof to be inspected and copied by the parties and their attorneys if authorized by law.
The Rule differs from G.L.c. 277, §68 in that it may be utilized by either side, and also in that the express language of the Rule contemplates judicial involvement in the issuance, and — on motion by the witness or other party with standing — the quashing, of any subpoena sought thereunder.
The leading case on procedure under Rule 17(a)(2) — Commonwealth v. Lampron — has already received mention. At issue there was the proper procedure for the acquisition, by the defense, of the records of medical, psychiatric, and social services providers of their treatment of the complainant in a sexual assault case.
The SJC held that Rule 17(a)(2) was the appropriate vehicle for summonsing records or other tangible evidence from third parties before trial.[9] The Rule is not, however, “a discoveiy tool,” but rather “is reserved for evidentiaiy materials that are likely to be admissible at hearing or at trial.” This means that the proponent of a Rule 17 subpoena “must show that the documentary evidence sought has a ‘rational tendency to prove [or disprove] an issue in the case’ ” before records may be summonsed into court. 441 Mass. at 269-70. Records potentially subject to a statutory privilege would then receive further treatment under the Bishop-Fuller (now Dwyer) protocol. Id. at 271-72.
The court’s discussion of “the procedure for issuance of a summons for the production of documentaiy evidence and objects under rule 17(a)(2)” (441 Mass. at 270) was not at all limited, however, to sexual assault cases, or to potentially privileged records, or to the subpoenas issued on request of the defense. It was, rather, eveiy bit as general as the language of the Rule itself:
Although the rule authorizes a clerk to issue a summons for a trial or evidentiaiy hearing, a clerk has no authority to issue such process for attendance or production of documents prior to trial. Only a judge has that authority prior to trial, on the filing of a motion. A judge’s power under rule 17(a)(2) includes the power to direct a non-party to produce documentaiy evidence prior to trial to allow the parties to inspect such documents or objects in preparation of trial. The rule is intended to expedite trial proceedings by avoiding delay caused by the often onerous task of responding to a summons of documents. This procedure must be followed whenever any documents, including documents likely to be privileged, are sought prior to trial.
441 Mass, at 270 (citations omitted).
Judge Smith’s treatise on Massachusetts criminal practice and procedure (a prior edition of which was cited in the just-quoted passage from Lampron) also makes the point: “Prosecutors and defense counsel may not, without judicial approval, summon persons or documents from third parties to their offices, prior to trial.” K.B. Smith, Criminal Practice and Procedure, 30A Mass. Practice Series §28.16 at 594 (2007).
In this case, there was no motion, no hearing, and no order for the issuance of the summons to the Suffolk Sheriff. Rule 17 thus furnishes no authority for the issuance of the subpoena, and I do not understand the Commonwealth to contend otherwise.
3. Practical Considerations for the Administration of Justice
The most substantial objection that the Commonwealth raises to the conclusion I have reached — that *238 c. 277, §68 may not be used except in connection with the production of evidence to a grand jury or a court— is a practical one. In this case, eight months’ worth of recordings comprise over 450 calls, and (it is represented) over 150 hours of listening time. Offering such recordings at trial through a keeper of records, without having obtained them in advance, would likely necessitate a lengthy recess so that the recordings may be heard and analyzed by both sides. Such a procedure would fly in the face of the spirit of Rule 14(a) (1) (A) (i),[10] entitling the defense to automatic discovery of “(a]ny . . . recorded statements . . . made by the defendant or co-defendant.” As a practical matter, neither the continuance, nor the surprise to the defense, will often be tolerated. Jail call recordings would, as a practical matter, be unusable as evidence.
The argument rests on a faulty premise. Section 68 is not the only means of summonsing documentary evidence. The procedure under Rule 17(a)(2), “allow[ing] the parties to inspect [subpoenaed] documents or objects in preparation of trial[,] ... is intended to expedite trial proceedings by avoiding delay caused by the often onerous task of responding to a summons of documents.” Lampron, 441 Mass. at 270.
First, however, there must be a motion, a showing of relevance, a hearing, and an order from the Court. It may be that the Commonwealth will not always be able to make the required showing. If not, so be it. Jail calls are recorded for security purposes, not for use as trial evidence.
It may also be, in a particular case, that no subpoena will be necessary, because the sheriff holding the defendant is willing to oblige the Commonwealth and has no policy to the contrary. If so, so be it. The Commonwealth is and should remain free to gather evidence from persons willing to give it, provided process is not misused and no constitutional, statutory, or other privacy rights are infringed.
Where the government seeks to invoke the compulsory process of the Court to obtain documentary evidence in the hands of a third party, however, it must abide by applicable statutes, rules, and common law. These offer two, and only two, alternatives: to subpoena a witness (with or without documents) to a grand jury proceeding or court hearing, or to apply for a summons under Rule 17(a). Neither course was followed here, and the subpoena to the Suffolk Sheriff was therefore unlawful.
4. Remedy
Because the subpoena to the Suffolk Sheriff did not comply either with G.L.c. 277, §68 or with Rule 17(a)(2), it was not a lawful subpoena. The question remains: what remedy, if any, is appropriate? Bright urges suppression. The Commonwealth argues that even if the subpoena was improper, Bright was assisted — not prejudiced — by getting the recordings earlier than a trial subpoena would have accomplished, and so suppression is not warranted.
Bright’s argument for suppression rests, in part, on his assertion that he had a reasonable expectation of privacy in his telephone conversations from the jail, which is constitutionally protected and was transgressed by the manner in which they were turned over to the prosecution in this case. I have analyzed, and rejected, identical arguments in a different case in this County involving recorded calls from the Cambridge jail. Commonwealth v. Fitzpatrick, 24 Mass. L. Rptr. 132 (Mass.Super. 2008; Billings, J.). The primary distinction between the two cases is that in Fitzpatrick no process was used, because the Middlesex Sheriffs telephone policy did not require a subpoena or court order before recordings were turned over to a prosecutor. Beyond this, the cases were quite similar, particularly in the fact that a detainee was advised, both in writing and in a recorded message at the beginning of each call, that his calls would be recorded and may be monitored.
I am not aware of any precedent in the intervening months that would cause me to alter my approach to the constitutional issue. I therefore would likely hold in this case, as I did in Fitzpatrick, that the defendant does not enjoy a constitutionally protected expectation of privacy in calls from jail which he knew at the time were being recorded and might be monitored.[11]
That does not, however, end the matter. The legally permissible method for compelling production of tangible evidence from third parties, other than for a grand jury or court hearing, is via Rule 17(a)(2) — period. The Rule applies to the government and the defendant, and to privileged and non-privileged materials. The Commonwealth, having disregarded the Rule, should not be in a better position than if it had followed it.
The Commonwealth nonetheless argues that suppression would be inappropriate absent a showing that Bright’s Fourth Amendment or Article 14 rights were violated, or that the subpoena prejudiced his right to a fair trial. In citing Liebman, Smallwood, and Commonwealth v. Hangar, 377 Mass. 503 (1979), for this proposition, however, the Commonwealth confuses the roles of the trial judge and an appellate court.
In Hangar, for example, the SJC held that “the [trial] judge erred” in allowing the Commonwealth discovery of the defendant’s alibi evidence without ordering reciprocal discovery of any rebuttal witnesses that might debunk the alibi, but that the error was harmless in view of the “overwhelming evidence of the defendant’s guilt." 377 Mass. at 508, 510, 511.
In Liebman, the Commonwealth introduced at trial documents obtained with grand jury subpoenas after the defendant was indicted. Said the SJC:
We agree with the defendant’s contention that it is improper to use the grand jury for the purpose of preparing an already pending indictment for trial. But we need not examine closely the prosecutor’s claim that the grand jury had a purpose of investí- *239 gating other crimes. Assuming, without deciding, that the grand jury was misused for discovery, we think there was no prejudice to the defendant. All of the evidence in question could have been obtained by trial subpoenas, and the defendant was made aware of it well in advance of trial. The evidence was peripheral at most. Thus the prosecutor obtained no unfair advantage.
379 Mass. at 677 (citations omited).
In Smallwood, there was no prejudice because the subpoenaed witness whom the Commonwealth improperly summonsed to a pretrial interview (the defendant’s brother) “refused to answer any questions and thus the Commonwealth obtained no information through this use of the subpoena power.” 379 Mass. at 887.
For an appellate court to say that a conviction may stand because a violation of the rules caused no prejudice to the defendant is quite different from suggesting that the trial judge, in deciding prospectively what evidence may and may not be admitted, should turn a blind eye toward such a violation. Trial judges generally consider the phrase “harmless error” as something less than a ringing endorsement from a reviewing court, and so we should. Better that there be no error at all.
I am not persuaded, moreover, that admission of the improperly obtained recordings in this case would be harmless. Their acquisition by the Commonwealth — which appears to concede at pp. 19-20 of its brief that it likely could not have made the showing required under Rule 17(a)(2) and Lampron — constitutes a discoveiy opportunity not permitted under the Rules, and not afforded the defense. Discoveiy in criminal cases — notwithstanding its “significant liberalization” in recent years (Commonwealth v. Durham, 446 Mass. 212, 224 (2008)) — is still carefully circumscribed and largely court-supervised. The governing statutes, rules, and common-law interpretations of them reflect a careful balancing, arrived at over many decades, among the interests of the government, the defense, and (sometimes) third parties.
As a practical matter, the Commonwealth in many cases will undoubtedly enjoy greater access to third-party evidence than the defense. For starters, even when the proper separation of powers (see Cote, 407 Mass. at 832) is maintained, the grand juiy presentment and associated subpoena power gives the Commonwealth a powerful investigative tool not available to the defense. Even after indictment, there may well be voluntary cooperation from sister law enforcement agencies and others that would not necessarily be extended to the defense. (See, e.g., paragraphs 14-15 and footnote 5 of the Findings of Fact, supra, and Durham 446 Mass. at 239 & n.6 (Cordy, J., dissenting).) This is a fact of life; there is nothing wrong with it; and it is not ordinarily the business of the judiciary to involve itself in either side’s investigation or trial preparation.
When the judicial authority is invoked by use of the subpoena power (enforceable, if necessary, by the contempt power), however, the Court is necessarily involved. The function of the Rules of Court rules is largely — and most importantly — to see that as far as possible, both sides get a fair trial.
In recognition of the State’s power and resources, and the advantage such a position gives the prosecution over the defense in a criminal case, a variety of constitutional, statutory, rule-based and common-law rights are afforded the accused in part to even the playing field. See Wardius v. Oregon, 412 U.S. 470, 480 (1973) (Douglas, J., concurring in result). As the United States Supreme Court has acknowledged, discovery regimes should similarly be responsive to this imbalance of power. See id. at 475-76 (“State’s inherent information-gathering advantages suggest that. . . any imbalance in discovery . . . should work in the defendant’s favor”). See also Commonwealth v. Perez, 698 A.2d 640, 643-44 (Pa.Super.Ct. 1997) (“the more liberal the discovery rules become, the greater the advantage the Commonwealth has in prosecuting its case”).
Id. at 239. It is the Court’s responsibility to preserve this balance of competing interests, so intricately and laboriously struck in the Rules, by enforcing them. Doing so facilitates a fair trial, and spares the appellate courts the awkward and imprecise task of trying to discern, from transcripts, which violations of the Rules were prejudicial and which were not.
I therefore conclude that Bright is entitled to a remedy for the Commonwealth’s misuse of the subpoena power. In fashioning it, I have taken care to be remedial, not punitive; i.e., I have attempted to put the Commonwealth in no worse position than if it had followed Rule 17(a). I have also borrowed much from Judge Brassard's aforementioned decision in the Odgren case.
I am aware that the Odgren case is presently before the Supreme Judicial Court on the Commonwealth’s petition for interlocutory review. The SJC’s docket indicates that the record has been assembled, but that no argument date has been set.
This case has a trial date of October 24, 2008. This does not leave much time for the SJC to render a decision in Odgren, or for the Commonwealth to pursue a similar appeal in this case were it so inclined. Were there a motion to continue the trial to accommodate an interlocutory appeal, I would decide the motion. Were there an order from an appellate court staying these proceedings, I would obey the order. At this point, however — bearing in mind that the case has been pending in this Court for 25 months, and Bright has been held for 27 months — October 24 is still the trial date.
*240 ORDER
For the foregoing reasons:
19. The defendant’s Motion to Suppress His Recorded Telephone Calls from Suffolk County Jail is ALLOWED.
20. No later than five business days from the entiy of this Order, the District Attorney and the defendant shall deliver, in clearly labeled, sealed envelopes, all copies of the recorded jail calls, and all copies of transcripts, notes, computer files, or other memorializations of the content thereof, presently in their possession, custody or control (including that of any employee, agent or consultant). These will be impounded, not to be reviewed by the Court or anyone else until further order of the Court, as will Exhibits 4, 5 and 6 from the September 11 hearing.
21. The Commonwealth may bring a motion for release of the recordings and their use at trial. Such a Motion, if brought, will be governed by the procedures and standards applicable to a motion under Mass.RCrim.P. 17(a)(2). In making the showing required thereunder, the Commonwealth may not rely upon or put forward any information derived, either directly or derivatively, from the recordings themselves.

There would not seem to be a serious question concerning Bright’s literacy. He had just completed his junior year at the Buckingham, Browne & Nichols School, a highly regarded independent day school in Cambridge, at the time of his arrest. Materials submitted in connection with his bail hearings suggest an average student. The reason Bright was not immediately arrested on the warrant was that he was out of state looking at colleges. Finally, I note that Ms. Burke recalled Bright from having been in an inmate Book Club with him.

The following is a description of the “inmate telephone system,” available to inmates and to detainees once they have been booked. During booking, a phone is made available to the detainee if requested; these phones do not have the prompts and warnings used in the inmate telephone system. The evidence was not clear whether calls from the booking area are recorded, or if so, whether there are any such calls among the recordings at issue in this case. For present purposes, I assume that calls from the booking area are not at issue in this case.

These are the recordings on Exhibit 6, a selection prepared by the Commonwealth from the 454 recordings on Exhibits 4 and 5. My reason for using this non-random sample is that Exhibits 4 and 5 would not play, on any of the equipment on which I attempted them. No harm done, though — I would not have listened to all 454 calls anyhow, and I credit the testimony of Malcolm Hayes (the system administrator for the inmate telephone system at Nashua Street), and therefore find, that every call on the system begins, once the call is answered, with a recorded warning that the call is being recorded and may be monitored.

There was no evidence concerning the reason for the variations. There was testimony that a warning that the call is being recorded and may be monitored is given at the beginning of every call. For present purposes, the variations in the wording of the warning are not material.

Prior to the 2006 revision of S482, the Sheriff would produce jail call recordings in response to a written request on a District Attorney’s letterhead.

Although section 68 does not expressly provide for subpoenas duces tecum, it has traditionally been interpreted to permit them. The Appeals Court endorsed this interpretation in Application of a Grand Jury of New York, 8 Mass.App.Ct. 760, 764 (1979).

Similarly, G.L.c. 233, §1 deals with how trial subpoenas are issued, not with subpoenas seeking production of records prior to trial. Mitchell, 444 Mass. at 791 n.12.

I note that the appellate consideration of c. 277, §68 is surprisingly sparse, considering the statute’s broad utilization. In addition to Lampron, Smallwood and Mitchell there are only Stornanti v. Commonwealth, 389 Mass. 518 (1983) (addressing various issues arising in connection with a lawfully issued grand jury subpoena) and Application of a Grand Jury of New York, 8 Mass.App.Ct. 760, 764 (1979) (upholding subpoena duces tecum issued under the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, and noting that although section 68 “make[s] no explicit provision for the production of papers, but only for the summoning of witnesses ... the power of our courts to issue such subpoenas has never been doubted”). (Liebman and Cote dealt with grand jury subpoenas, but without explicitly referencing section 68.)
There are also Superior Court cases, which have not been wholly consistent concerning the propriety of using pre-trial subpoenas to procure jail call recordings. See, in reverse chronological order: Commonwealth v. Odgren, Middlesex Superior Court No. 07-254 (Brassard, J.), findings and order dictated on 5/14/08 and presently on interlocutory appeal to the SJC; Commonwealth v. Dubose, Suffolk Superior Court Criminal No. 07-10019, “Memorandum of Decision and Order on Defendant’s Motion to Suppress Jail recordings,” dated 2/25/08 (Riley, J.; suppressing recordings obtained by grand jury subpoena); Commonwealth, v. Martin, Suffolk Superior Court Criminal No. 07-10193, “Findings of Fact, Conclusions of Law, and Order on Defendant’s Motion to Suppress Jail recordings,” docketed 12/5/07 (Gants, J.; declining to suppress recordings obtained by grand jury subpoena); and Commonwealth v. Acevedo, et al., Hampden Superior Court Criminal Nos. 00-1279, 00-1283, 00-1285, 00-1294, 00-1302, “Memorandum and Order on Defendants’ Motion to Suppress,” docketed 5/15/01 (Ford, J.; declining to suppress recordings obtained by subpoena). My own decision in Commonwealth v. Fitzpatrick, 24 Mass. L. Rptr. 132 (Mass.Super. 2008; Billings, J.), did not address this issue, as the recordings in that case were not obtained by subpoena.

Accord, Martin v. Commonwealth, 451 Mass. 113, 123 n.20 (2008); Commonwealth v. Draheim 447 Mass. 113, 118 n. 12 (2006) (“Although the Commonwealth relied on no particular authority for seeking [DNA] samples from the third parties, the appropriate mechanism for obtaining ‘books, papers, documents, or other objects’ from a third party is Mass.R.Crim.P. 17(a)(2)”).

Because the recordings would not have been in the possession, custody or control of the prosecutor, persons under his direction or control, or persons who have participated in investigating or evaluating the case, Rule 14(a)(l)(A)(i) does not literally apply. Nonetheless, the Rule’s placement of the defendant’s own statements at the top of the list of items subject to automatic discovery underscores the obvious: there is no more damaging evidence, and no surprise more irremediable, than self-inculpation on an audio recording played for the jury.

As discussed above, the Suffolk Sheriffs Policy S482— unlike the Middlesex Sheriffs policy considered in Fitzpatrick — limits the circumstances in which the Sheriff may release the recordings. There was no evidence, however, that Policy S482 was provided to Bright or to other Nashua Street detainees, or that Bright was otherwise advised of the circumstances in which the Sheriff would, and would not, release recordings of his calls. Policy S482 would seem, in other words, to have little relevance to a discussion of a detainee’s reasonable expectation of privacy.