IN THE MATTER OF A GRAND JURY SUBPOENA.

Suffolk. May 4, 2009. - September 11, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Constitutional Law,* Privacy, Imprisonment. *Privacy. Imprisonment,* Inmate telephone calls, Enforcement of discipline. *Search and Seizure,* Incarceration, Expectation of privacy. *Telephone. Grand Jury. Subpoena.*

This court concluded that the constitutionally protected rights of a pretrial detainee or inmate are not violated where, in response to a grand jury subpoena, a sheriff provides to a grand jury recordings of telephone calls made by such a detainee or inmate, given that no detainee or inmate could have an objectively reasonable expectation of privacy in the recorded telephone conversations where all parties have notice that calls are subject to monitoring and recording, and legitimate penological interests justified such recording or monitoring; therefore, no judicial approval would be required for a grand jury to subpoena such recordings. [687-693] MARSHALL, C.J., dissenting, with whom BOTSFORD and CORDY, JJ., joined. CORDY, J., dissenting in part.

MOTION filed in the Superior Court Department on June 2, 2008.

The proceeding was heard by *Thomas E. Connolly,* J., and entry of a finding of contempt was simultaneously ordered and stayed by him.

The Supreme Judicial Court granted an application for direct appellate review.

*Ellen M. Caulo* for Suffolk County Sheriff's Department.

*John P. Zanini,* Assistant District Attorney, for the Commonwealth.

*Jonathan Shapiro (Patricia L. Garin* with him) for Committee for Public Counsel Services & others, amici curiae.

*Patrick C. Lee,* for Joseph D. McDonald, Jr., amicus curiae, submitted a brief.

IRELAND, J. This case requires us to decide whether the constitutionally protected privacy rights of a pretrial detainee or an

inmate are violated where, in response to a grand jury subpoena, a sheriff provides to a grand jury recordings of telephone calls made by such a detainee or inmate.[1] A Superior Court judge denied a motion to quash made by the sheriff, and entered a finding of contempt when the sheriff declined to turn over the subpoenaed recordings. Because we conclude on the record before us that the detainee or inmate could have no objectively reasonable expectation of privacy in the recorded telephone conversations where all parties have notice that calls are subject to monitoring and recording and, further, where the recording and monitoring is justified by legitimate penological interests, we affirm the finding of contempt against the sheriff and the denial of her motion to quash the subpoena.

1. *Background.* The facts are not in dispute. The monitoring and recording of telephone calls made by detainees and inmates held by the Suffolk County sheriff's department (sheriff) is governed by a policy that provides, among other things, that all detainees and inmates are to be "informed at the time of admission that telephone calls are subject to monitoring and recording."[2] In accordance with the policy, each detainee and inmate at the jail is assigned a personal identification number (PIN), which must be entered in order to place a telephone call. Parties to telephone calls made by detainees and inmates receive a voice prompt to select one of four languages, English, Russian, Spanish, or Vietnamese, and are then advised by a prerecorded announcement, made in the language selected, that the call is originating from the jail and that it is being recorded and is subject to monitoring. Moreover, in addition to advising detainees and inmates during their orientation to the jail of the monitoring and recording of their telephone calls, the sheriff distributes a written guide to detainees and inmates that states that the sheriff "records all inmate telephone conversations, except calls to at-

---

[1]The record before us is very limited. It is not clear from the record whether the person being held in the custody of the Suffolk County sheriff's department, and who made the telephone calls, the recordings of which are the subject of the grand jury subpoena in this case, is a pretrial detainee or an inmate. Because the conclusion we reach in this case applies to pretrial detainees as well as to inmates, and the status of the person therefore does not affect our analysis, we shall use both terms to refer to the person.

[2]It is not clear from the record before us whether the policy itself is either provided to detainees and inmates or made available to them.

torneys and legal services organizations," and signs are posted on or near all telephones explaining to detainees and inmates in English and Spanish that all calls are subject to monitoring and recording. Detainees' and inmates' calls to attorneys are not monitored or recorded.

In May, 2008, the sheriff was subpoenaed to provide certain records to a Suffolk County grand jury, including recordings of all telephone calls made by a particular pretrial detainee or inmate being held at the jail, for use in an investigation. The sheriff moved to quash on the sole ground that the recent allowance of a motion to suppress by a judge in the Superior Court in an unrelated case had called into question the propriety of compliance with grand jury subpoenas seeking recordings of pretrial detainees' and inmates' telephone calls.[3] A Superior Court judge denied the motion. The sheriff indicated to the judge that, in order to seek review of the issue by this court, she would not comply with the subpoena and intended to appeal from an order of contempt that would enter against her as a result. The judge entered a finding of contempt but contemporaneously stayed the order pending the sheriff's anticipated appeal. Mass. R. A. P. 6, as appearing in 378 Mass. 932 (1979). The sheriff appealed; we then granted an application for direct appellate review of the district attorney for the Suffolk district, and we now affirm the denial of the motion to quash.[4]

2. *Discussion.* Although the sheriff appeals from the order of contempt, we in effect review the judge's denial of the motion to quash. See *Matter of a Grand Jury Subpoena*, 411 Mass. 489, 492-493 (1992) (orders denying motions to quash subpoenas are not final decisions and are not appealable; usual way of

---

[3]The sheriff's policy regarding detainee and inmate telephone use provides that "[i]nformation obtained from inmate telephone calls can be disclosed only as reasonably necessary to promote legitimate operational standards, law enforcement or public safety purposes," and that "[c]opies of inmate phone call logs and recorded phone calls will be provided in response to legally issued subpoenas or court orders." The sheriff's department generally does not listen to the recordings of detainee or inmate calls before providing them in response to subpoenas.

[4]We acknowledge the amicus briefs filed by the sheriff of Plymouth County and the Committee for Public Counsel Services, Massachusetts Correctional Legal Services, the Massachusetts Association of Criminal Defense Attorneys, the American Civil Liberties Union of Massachusetts, the Youth Advocacy Project, and the Children's Law Center of Massachusetts.

challenging such orders is to disobey them and appeal from subsequent contempt order).

The sheriff asks us to conclude that the constitutional privacy rights of the pretrial detainee or inmate will not be violated where, in response to a grand jury subpoena, the sheriff provides recordings of the detainee's or inmate's telephone calls to the grand jury.[5] We conclude that, where the sheriff's policy of monitoring and recording detainees' and inmates' telephone calls is preceded by notice to all parties and, further, where the recording and monitoring is justified by legitimate penological interests, no privacy interest exists in the recorded conversations such that they cannot be obtained by a grand jury subpoena.

Privacy interests protected by the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights exist where "it is shown 'that a person [has] exhibited an actual (subjective) expectation of privacy,' and when that 'expectation [is] one that society is prepared to recognize as "reasonable." ' " *Commonwealth* v. *Blood,* 400 Mass. 61, 68 (1987), quoting *Katz* v. *United States,* 389 U.S. 347, 361 (1967) (Harlan, J., concurring). The Federal courts have concluded that, where inmates have notice that their telephone conversations are monitored and recorded, such monitoring and recording does not violate the Fourth Amendment, because there could be no subjective expectation of privacy that society is prepared to recognize as reasonable. See, e.g., *United States* v. *Van Poyck,* 77 F.3d 285, 290-291 (9th Cir.), cert. denied, 519 U.S. 912 (1996); *United States* v. *Amen,* 831 F.2d 373, 379-380 (2d Cir. 1987), cert. denied sub nom. *Abbamonte* v. *United States,* 485 U.S. 1021 (1988). See also *Bell* v. *Wolfish,* 441 U.S. 520, 537 (1979) (loss of privacy inherent incident of confinement for pretrial detainee). Cf. *Hudson* v. *Palmer,* 468 U.S. 517, 525-530 (1984) (society not prepared to recognize as legitimate any subjective expectation of privacy that prisoner might have in prison cell). Moreover, in *Cacicio* v. *Secretary of Pub. Safety,* 422 Mass. 764, 772-773 (1996), we held that regulations promulgated by the Department of Correction, governing the monitoring and recording of inmates' telephone calls (and identical in all

---

[5]The sheriff states that she is satisfied that the subpoena appears facially valid.

material respects to the sheriff's policy here), did not violate art. 14 where the inmates were made aware of the procedure and its requirements.

Here, there is no question that detainees and inmates have notice that telephone calls, other than those made to attorneys, are subject to monitoring and are recorded. When considered in light of the loss of privacy that is one of the "inherent incidents of confinement" during detention, whether pretrial or after sentencing, *Bell* v. *Wolfish, supra,* the detainee or inmate could have no subjective expectation of privacy in the recorded conversations that society would be prepared to recognize as reasonable. See *Cacicio* v. *Secretary of Pub. Safety, supra.* Cf. *Commonwealth* v. *Eason,* 427 Mass. 595, 600 (1998) (any expectation of privacy in telephone conversation not objectively reasonable because person not reasonably entitled to assume that no one listening in on extension telephone). Nor do we think that society would be prepared to recognize as reasonable an expectation of privacy held by a detainee or inmate that recordings of his telephone calls, which were made by the sheriff with notice given to all parties to the calls, might not be shared with law enforcement authorities.[6]

We also consider whether the sheriff's policy, as to both the recording of calls and the providing of those recorded calls to a

---

[6]Although we previously said that "[i]t would appear reasonable to expect that a government agency, to which a citizen is required to submit certain materials, will use those materials solely for the purposes intended and not disclose them to others in ways that are unconnected with those intended purposes," we were considering whether a high school student might have a reasonable expectation of privacy in his or her school papers that were handed in to teachers. *Commonwealth* v. *Buccella,* 434 Mass. 473, 485 (2001), cert. denied, 534 U.S. 1079 (2002). The circumstances here are readily distinguishable. Although detainees and inmates are required to submit their conversations to recording if they choose to use the institution's telephone system to communicate, the recordings of their conversations are made for the purpose of ensuring penological security. Because the sheriff records and monitors detainees' and inmates' calls in order to detect and deter criminal activity occurring within or without the facility that is being facilitated through use of the facility's telephone system, it would not be reasonable to expect that evidence of criminal activity in those recordings might not be provided to law enforcement authorities — regardless whether the sheriff does so on her own initiative in order that such criminal activity might be investigated, or whether she does so in response to an investigation being conducted by a grand jury, as was the case here.

grand jury in response to a subpoena, impinges in some fashion on the detainee's or inmate's art. 14 rights. We conclude that valid penological interests justify the sheriff's policy and therefore the policy does not violate art. 14. Our analysis in this regard is controlled by our decision in *Cacicio* v. *Secretary of Pub. Safety*, *supra* at 772-773, where we adopted the deferential standard of review for constitutional challenges to prison regulations and policies established by the United States Supreme Court in *Turner* v. *Safley*, 482 U.S. 78, 89 (1987) ("when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests"). Applying the *Turner* decision's four-factor inquiry to determine the validity of the regulations of the Department of Correction governing the recording and monitoring of inmate telephone calls, we concluded that the regulations were justified by valid penological interests and did not violate art. 14. *Cacicio* v. *Secretary of Pub. Safety*, *supra* at 770-773.[7]

On the record before us here, we reach the same conclusion as we did in the *Cacicio* decision, i.e., that the sheriff's policy does not violate the detainee's or inmate's art. 14 rights.[8] Although it is not clear whether the recorded telephone calls at

---

[7]Our analysis of the four-factor inquiry identified in *Turner* v. *Safley*, 482 U.S. 78, 89-91 (1987), concluded that (1) the department enacted the regulations for the legitimate purpose of improving the security of the correctional system and the regulations logically advance that goal; (2) inmates have alternate means of exercising their rights, such as through mail or personal visits; (3) invalidating or limiting the regulations would have a substantial effect on the allocation of prison resources; and (4) there were no alternative solutions to accommodate the rights of inmates at a de minimis cost to the department's valid penological goals. *Cacicio* v. *Secretary of Pub. Safety*, 422 Mass. 764, 770-771 (1996).

[8]In *Cacicio* v. *Secretary of Pub. Safety*, *supra* at 765-766, we considered a much broader challenge, premised on several Federal and State constitutional grounds, to the facial validity of the regulations of the Department of Correction governing the monitoring and recording of inmates' telephone calls. Here, we limit our consideration of the sheriff's policy under the *Turner* inquiry (which we adopted in *Cacicio*) to the sole question whether the detainee's or inmate's rights under art. 14 of the Massachusetts Declaration of Rights are somehow impinged on — despite the lack of a reasonable expectation of privacy in the calls — and, if so, whether those rights are violated. No direct challenge is made here to the sheriff's policy of recording the telephone calls, but rather the challenge is directed to the sheriff's policy of providing the recordings, in response to a subpoena, to a grand jury.

We have little difficulty concluding that a valid and rational connection ex-

issue here were made by a detainee or an inmate, the distinction does not affect our analysis.[9] The sheriff's policy of recording pretrial detainees' telephone calls, and providing those recordings in response to grand jury subpoenas, is justified by the same valid penological interests, i.e., the detection and deterrence of criminal activity occurring within the institution itself or which is being facilitated through the use of the institution's telephone system, see note 7, *supra*, that justify the recording of

ists between the policy of providing the recordings in response to a grand jury subpoena and the sheriff's legitimate and neutral concerns for institutional security. It is the same connection that exists between the policy of recording the calls themselves and the sheriff's institutional security concerns, and which we held to be valid in the *Cacicio* decision: the detection and deterrence of criminal activity within or without the correctional institution that is being facilitated through the use of the institution's telephone system. If criminal activity is discovered through the monitoring and recording of telephone calls, the sheriff could be expected to turn over that information, as well as any recordings, to law enforcement authorities, as discussed at note 6, *supra*. The sheriff may provide recordings of telephone calls in response to a grand jury subpoena because the grand jury might be investigating criminal activity within the institution or which has been facilitated through the use of its telephone system. It is not for the sheriff to determine what type of criminal activity is being investigated as a basis for deciding whether to provide recordings in response to a grand jury subpoena. Turning to the question whether alternative means exist for detainees or inmates to exercise the challenged right, our conclusion is the same as it was in *Cacicio* v. *Secretary of Pub. Safety*, *supra* at 771. As to the third factor, whether there might be a significant "ripple effect" on the allocation of prison resources were the sheriff to be required to determine which of the vast number of recorded telephone calls could be provided to a grand jury, *Turner* v. *Safley*, *supra* at 90, it is clear that the sheriff's department would not be capable of bearing the burden. Nor, considering the related fourth factor, has any alternative solution been proposed that would avoid the use of substantial resources by the sheriff were the sheriff to cease complying with all facially valid subpoenas and instead determine what calls could be provided in response to a particular subpoena.

[9]The United States Court of Appeals for the Second Circuit held in *United States* v. *Cohen*, 796 F.2d 20, 24 (2d Cir.), cert. denied, 479 U.S. 854 (1986), and cert. denied sub nom. *Barr* v. *United States*, 479 U.S. 1055 (1987), that a pretrial detainee retains limited rights under the Fourth Amendment to the United States Constitution against an investigative search of his prison cell initiated by the prosecution and, in a subsequent case, limited the reach of its decision to pretrial detainees rather than inmates. See *Willis* v. *Artuz*, 301 F.3d 65, 68 (2d Cir. 2002). The *Cohen* decision does not affect our analysis because here the sheriff, rather than prosecutors or the police (as was the case in *Cohen*), conducts the monitoring and recording of telephone calls made by detainees and inmates, and the recording is done for the purpose of serving the sheriff's legitimate penological security interests.

those telephone calls and providing the recordings in response to grand jury subpoenas. *Cacicio* v. *Secretary of Pub. Safety*, *supra*.

We therefore turn to whether, where the detainee or inmate has no actual, objectively reasonable expectation of privacy in the recorded telephone conversations, and where, furthermore, the sheriff's policy of recording detainee or inmate telephone calls is valid because it is reasonably related to legitimate penological interests, the constitutional rights of the detainee or inmate are nonetheless violated when the sheriff provides the recordings in response to a grand jury subpoena. We conclude that there is no constitutional violation.

As an investigatory body with broad powers and substantial discretion to "inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred," the grand jury plays a unique role in our criminal justice system. *Commonwealth* v. *Williams*, 439 Mass. 678, 683 (2003), quoting *Matter of a Grand Jury Investigation*, 427 Mass. 221, 226, cert. denied sub nom. *A.R.* v. *Massachusetts*, 525 U.S. 873 (1998). However, we have recognized in the context of discovery conducted in the course of certain investigations other than grand jury investigations that even where relevant evidence is sought as part of a legitimate investigation, "privacy interests of the [witness] and possibly of others should be considered." *Matter of the Enforcement of a Subpoena*, 436 Mass. 784, 793-796 (2002), quoting *Ward* v. *Peabody*, 380 Mass. 805, 819 (1980). Grand juries "may not override constitutional rights, such as the right against self-incrimination (*Powers* v. *Commonwealth*, 387 Mass. 563, 564-565 [1982]), and may not issue unreasonable orders to produce documents (*Hale* v. *Henkel*, 201 U.S. 43, 76 [1906])." *Commonwealth* v. *Doe*, 408 Mass. 764, 768 (1990).

Here, where all parties to the recorded telephone calls had notice that their conversations were not private, and where the detainee or inmate had no objectively reasonable expectation of privacy, any privacy interest in those conversations must be given little, if any, weight. Many types of records that are subject to grand jury subpoenas, such as private letters and electronic mail correspondence, may have been communicated initially without prior notice to the author and recipient that others might

read them. There is no constitutional bar to the production of private documents or things to a grand jury, and in the absence of a recognized common-law or statutory restriction, there is no limitation on their admissibility as evidence at trial.

There is no question that the recordings of the detainee's or inmate's telephone calls come within the permissible scope of the grand jury's investigation, because they may reveal, among other things, pertinent admissions or evidence of consciousness of guilt. Where the detainee or inmate lacked any objectively reasonable expectation of privacy in the recorded telephone calls, they cannot be considered so peculiarly private that, under art. 14, judicial approval would be required for a grand jury to subpoena them.[10]

3. *Conclusion.* For the foregoing reasons, we affirm the finding of contempt, affirm the denial of the motion to quash, and remand the case for further proceedings consistent with this decision.

*So ordered.*

MARSHALL, C.J. (dissenting, with whom Botsford, J., joins, and Cordy, J., joins in part). In *Cacicio* v. *Secretary of Pub. Safety*, 422 Mass. 764 (1996) (*Cacicio*), this court held that the recording of all telephone calls placed by prison inmates (excluding calls to counsel) is not constrained by art. 14 of the Massachusetts Declaration of Rights[1] where the recordings enhance the security and safety of prisons. Central to the court's analysis

---

[10]In *Commonwealth* v. *Doe*, 408 Mass. 764, 769 (1990), we held that a judge must decide whether it is reasonable to direct a person to appear at a lineup sought by a grand jury, because the intrusiveness of such an order "is sufficiently great so as to require that there be a reasonable basis for issuing and enforcing such an order." That particular concern is lacking here. The sheriff's policy of providing detainees' and inmates' recorded telephone calls in response to a grand jury subpoena does not implicate the same concern for intrusiveness. Here, as discussed *supra*, all parties to detainees' and inmates' telephone calls are aware that the calls are recorded. Nor does providing the telephone call recordings to a grand jury involve the type of social stigma, personal risk, and humiliation involved in a lineup appearance. See *id.* at 770 n.8.

[1]Article 14 of the Massachusetts Declaration of Rights provides, in part: "Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions."

was its holding that the record in that case established "valid penological interests" sufficient to override the art. 14 rights of inmates. *Id.* at 773.[2] Today the court expands *Cacicio's* carefully crafted holding in sweeping terms, ruling that "*no* privacy interest [of an inmate or pretrial detainee] exists in the recorded conversations" (emphasis added). *Ante* at 688. The implications of this are profound, for under today's decision prison officials (and prosecutors) are no longer constrained in any respect by art. 14 from any use they may make of the private telephone conversations of any inmate, including pretrial detainees. In my judgment the court reaches this result by starting from the erroneous premise that *Cacicio* controls the outcome in this case and by failing to recognize as a result that this case requires us to consider two separate inquiries. First, does a pretrial detainee or inmate retain any privacy rights in recordings validly made by prison officials? Second, may those records be subpoenaed for grand jury purposes? I would answer the first question in the affirmative. As for the second, I do not agree in particular that a pretrial detainee's privacy rights in the telephone recordings "must be given little, if any, weight," *ante* at 692, in responding to a grand jury subpoena.[3] I respectfully dissent.

I first discuss the court's ruling on privacy,[4] before turning to the separate issue of the right of the Commonwealth to subpoena the recorded telephone conversations for grand jury purposes. We know little of the facts underlying this appeal. *Ante* at 686

---

[2]Federal courts interpreting the Fourth Amendment to the United States Constitution have similarly held that inmate telephone calls may be recorded. See *Cacicio* v. *Secretary of Pub. Safety*, 422 Mass. 764, 772 (1996), and cases cited. I do not take issue with that well-established law. As I explain *infra*, it is the court's view that such recording results in a loss of *all* privacy interests of inmates and pretrial detainees in their personal telephone calls with which I disagree.

[3]The court does not differentiate between a pretrial (and presumably innocent) detainee and a convicted inmate. *Ante* at 690-692. Because I consider the court's decision most troubling in its application to pretrial detainees, I focus my discussion on those individuals.

[4]I use the term "privacy" in the art. 14 sense of an individual's right to be free from governmental eavesdropping on private conversations or searching through private papers, see note 1, *supra*, not in the sense that it is used in opinions of the United States Supreme Court concerning its jurisprudence based on the Ninth Amendment or Fourteenth Amendment to the United States Constitution. See, e.g., *Griswold* v. *Connecticut*, 381 U.S. 479 (1965).

n.1. We know only that a grand jury subpoena summonsed recordings of all telephone conversations made by an inmate or pretrial detainee housed at the Suffolk County house of correction during a six-week period. We know nothing concerning the number of telephone conversations recorded, or the identity of the individuals to whom the calls were placed. We do not know — if the individual is a pretrial detainee — whether he has been indicted. We do not know whether the recordings are sought in connection with an investigation into possible criminal activity occurring at the correctional facility or whether they are sought to seek evidence in connection with a pending indictment.[5] We do not know whether any of the telephone calls are covered by any privileges — for example, whether any telephone calls were placed to the pretrial detainee's pastor,[6] psychotherapist,[7] or spouse.[8,9] We do not know whether the inmate or pretrial detainee had any practical means of communicating with his family or pastor or physician except by telephone. We may surmise, because of the location of incarceration, that the inmate or pretrial detainee is an adult. But the court's ruling has broad consequences for children as well. It has been represented to this court in an amicus brief,[10] for example, that this is not an isolated case, and

---

[5]It is "improper to use the grand jury for the purpose of preparing an already pending indictment for trial." *Commonwealth* v. *Cote*, 407 Mass. 827, 832 (1990), quoting *Commonwealth* v. *Liebman*, 379 Mass. 671, 677 (1980).

[6]See G. L. c. 233, § 20A (clergy privilege).

[7]See G. L. c. 233, § 20B (psychotherapist privilege).

[8]See G. L. c. 233, § 20, First and Second (spousal privilege). I recognize that the spousal privilege provided for in the second clause of G. L. c. 233, § 20, does not protect a spouse from testifying before a grand jury, *Matter of a Grand Jury Subpoena*, 447 Mass. 88, 99 (2006), but that does not mean that the detained spouse retains *no privacy* interest in those communications: the protections of the first clause, which apply to "private conversations" between spouses, do apply to grand jury proceedings. *Id.* at 89 n.1 ("That provision precludes any inquiry before the grand jury that would call on the witness to divulge private spousal conversations").

[9]Massachusetts recognizes at least fifteen statutory and three common-law privileges. See *Matter of a Grand Jury Supoena*, 430 Mass. 590, 597 n.12 (2000), and authorities cited. See generally M.S. Brodin & M. Avery, Massachusetts Evidence c. 5 (8th ed. 2007) (listing privileges).

[10]The amicus brief is signed by, among others, the Committee for Public Counsel Services (CPCS), the agency established by statute to coordinate the representation of indigent defendants in criminal and certain noncriminal cases. See G. L. c. 211D, § 1.

that prosecutors in other counties have subpoenaed the telephone recordings of inmates and pretrial detainees. In addition, we are informed that some minors who are detained by the Department of Youth Services before trial have every telephone conversation *and* conversation during every visit recorded, including conversations between those minors and their parents, and that those recordings are routinely disseminated to prosecutors.[11] In other words, every communication between a parent and child is recorded and, on request, turned over to the prosecutor.[12] It is against this bare-bones record that I consider the privacy interests at stake here.

I begin with the observation that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," *Turner* v. *Safley*, 482 U.S. 78, 84 (1987), and that while the scope of an inmate's privacy rights may be restricted to further "legitimate penological interests," *Cacicio, supra* at 770, quoting *Turner* v. *Safley, supra* at 89, an inmate "retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Turner* v. *Safley, supra* at 95, quoting *Pell* v. *Procunier*, 417 U.S. 817, 822 (1974). For this reason, a pretrial detainee's presence in prison "does not totally strip away" his rights secured by the Fourth Amendment. *United States* v. *Cohen*, 796 F.2d 20, 24 (2d Cir.), cert. denied, 479 U.S. 854 (1986), and cert. denied sub nom. *Barr* v. *United States*, 479 U.S. 1055 (1987). As the court in *Cohen* observed, pretrial detainees retain even greater rights under the Fourth Amendment than convicted individuals. See *id.* (pretrial detainees

---

[11]CPCS represents that every telephone call placed by, and every visit to, minors incarcerated at the Department of Youth Services secure unit at the Plymouth County correctional facility are recorded by the sheriff and made available to the district attorney. In at least one instance, a district attorney subpoenaed and obtained a recording of each such telephone call and visit occurring over a period of more than six months. There is no claim by the Commonwealth or the sheriff that such representations are inaccurate in any respect.

[12]In *Cacicio* v. *Secretary of Pub. Safety, supra*, this court upheld the right of prison officials to record an inmate's telephone calls because inmates had "alternative means of exercising their rights," such as through visits. *Id.* at 771. If all visits and all telephone conversations are recorded, and those recordings are turned over to prosecutors, I am unable to see how either the parents or the minors at issue can exercise their constitutional rights.

retain Fourth Amendment privacy interest in their prison cells, although prison officials have right to inspect cells; distinguishing precedent holding that convicted inmates have no such right).[13,14] Article 14 certainly provides no fewer rights to pretrial detainees than does the Fourth Amendment. See *Commonwealth v. Cote*, 407 Mass. 827, 834-835 (1990), quoting *Commonwealth v. Blood*, 400 Mass. 61, 68 n.9 (1987) ("We have often recognized" that art. 14 "does, or may, afford more substantive protection" than United States Constitution); *Commonwealth v. McCollins*, 23 Mass. App. Ct. 436, 439 (1987) (recognizing, in context of art. 14 challenge to prison search, that "there may be instances in which art. 14 of the Declaration of Rights will call for greater protection of individual rights than that

---

[13]In *Hudson* v. *Palmer*, 468 U.S. 517 (1984), the United States Supreme Court had held that a convicted inmate had no Fourth Amendment privacy rights in his prison cell. As Professor LaFave succinctly noted, "It would be most unfortunate if *Hudson* were extended so as to deprive pretrial detainees, as yet not convicted of the crimes alleged, of all privacy and possessory rights in their effects. For example, if a pretrial detainee was subjected to a cell search not 'even colorably motivated by institutional security concerns,' then surely *Hudson* should not be treated as foreclosing challenge of that search." 5 W.R. LaFave, Search and Seizure § 10.9(a), at 407-408 (4th ed. 2004), citing *United States* v. *Cohen*, 796 F.2d 20 (2d Cir.), cert. denied, 479 U.S. 854 (1986), and cert. denied sub nom. *Barr* v. *United States*, 479 U.S. 1055 (1987).

[14]The court dismisses *United States* v. *Cohen, supra*, stating that it "does not affect our analysis." *Ante* at 691 n.9. I disagree. While the circumstances in the *Cohen* case are not identical to those implicated here, that court's analysis is on point. It is the sheriff who records telephone calls placed by inmates and pretrial detainees, but it is the prosecutor — not the sheriff — who seeks to examine the recordings of those telephone calls. There is nothing in the record to suggest that a prosecutor necessarily does so in furtherance of the sheriff's penological purposes. Rather, the prosecutor appears to be attempting to do what the prosecutor in the *Cohen* case did — search for evidence to build or strengthen a case against the detainee.

I, of course, agree with the court's supposition that a sheriff could be expected to turn over to law enforcement authorities any information concerning criminal activity that the sheriff might discover during the monitoring of telephone calls, *ante* at 690 n.8, although the sheriff plainly did not obtain such information here. It does not follow that a sheriff is free to provide recordings of telephone calls because a grand jury "might" be investigating criminal activity within the institution or through the use of the prison telephone system. I agree that the determination whether there exists a valid basis for a grand jury to subpoena telephone recordings "is not for the sheriff." *Id.* That determination should be made by an impartial tribunal. See *infra*.

which is afforded by the Fourth Amendment to the United States Constitution").

The court today concludes that because an inmate or pretrial detainee has "notice" of the recording of his telephone calls, *all* of his constitutional rights protected by art. 14 are vitiated; in other words, a limited purpose intrusion into what is unquestionably a fundamental constitutional right to privacy swallows that right wholesale. No such conclusion is warranted under art. 14.

The court notes, *ante* at 688, that in determining the existence of a protected privacy interest under art. 14, we have adopted the United States Supreme Court's two-pronged inquiry, which contains both a subjective and an objective component: (1) is there a subjective expectation of privacy (2) that society is prepared to recognize as reasonable? See *Commonwealth* v. *Blood, supra* at 68, quoting *Katz* v. *United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). The court then declares that an inmate or a pretrial detainee could have no reasonable "subjective expectation of privacy" because his telephone calls are recorded, *ante* at 689, and implies that the lack of a subjective expectation of privacy compels the conclusion that "no privacy interest [at all] exists in the recorded conversations." *Ante* at 688. I disagree because the subjective expectation inquiry is inappropriate where the government controls expectations, and in any event, a detainee retains an objectively reasonable subjective expectation of privacy in the use to which recordings of his personal telephone calls will be put.

The United States Supreme Court "has always emphasized the second of these two requirements [set out in the *Katz* case for defining a protected privacy interest]," *Hudson* v. *Palmer*, 468 U.S. 517, 525 n.7 (1984), and I would do likewise. "[C]onstitutional rights are generally not defined by the subjective intent of those asserting the rights. The problems inherent in such a standard are self-evident." *Id.* Those problems become manifest where the government can shape expectations by, for example, announcing a policy of monitoring conversations; in such a circumstance, the two-pronged inquiry provides "an inadequate index of Fourth Amendment protection." *Smith* v. *Maryland*, 442 U.S. 735, 740 n.5 (1979). In other words, "*Katz* surely does not mean that Fourth Amendment protections evaporate upon advance notice of any intended surveillance."

5 W.R. LaFave, Search and Seizure § 10.9(d), at 427-428 (4th ed. 2004). It is therefore "more appropriate to consider whether, objectively speaking, there is a justified expectation of privacy." *Id.* See *Blackburn* v. *Snow*, 771 F.2d 556, 563 & n.4 (1st Cir. 1985) (rejecting argument that visitor to prison must have *subjective* expectation of privacy to have a reasonable expectation of privacy; whether visitor may have been put "on 'notice' that she would be subject to an examination of her body cavities before entering the [j]ail cannot determine the 'controlling' question: namely, whether her expectation that she would be free of such searches was one society would call reasonable"); *id.*, quoting Amsterdam, Perspectives on the Fourth Amendment, 58 Minn. L. Rev. 349, 384 (1974) (subjective expectation of privacy "can neither add to, nor its absence detract from, an individual's claim to Fourth Amendment protection"). For this reason, the primary focus of today's opinion on an inmate's or pretrial detainee's "subjective" expectation of privacy, see *ante* at 689, while minimizing the context in which that expectation is formed, does unnecessary violence to our art. 14 jurisprudence. See *Commonwealth* v. *Cote*, *supra* at 833-835.

Even accepting the subjective inquiry as appropriate in these circumstances, I would reach the same result because, in my view, the court misapplies that inquiry by focusing primarily on whether the inmate or pretrial detainee has an expectation of privacy in his telephone calls and does not sufficiently evaluate whether he has a privacy interest in the *dissemination* of the recordings of those calls. Although institutional security concerns may outweigh a detainee's privacy rights and permit monitoring of a detainee's telephone calls by the sheriff, it does not follow that a detainee can have no subjective expectation of privacy with regard to other governmental officials. To the contrary, we have previously said that where materials "are entrusted to a government entity, under some degree of compulsion, for a limited purpose that would not normally entail disclosure to others," it would "appear reasonable" to expect that the government entity will use the items "solely for the purposes intended and not disclose them to others in ways that are unconnected with those intended purposes." *Commonwealth* v. *Buccella*, 434 Mass. 473, 485 (2001), cert. denied, 534 U.S. 1079 (2002).

There is no assertion here that this grand jury investigation is connected with the "limited purpose" (institutional security) that justified recording the inmate's or pretrial detainee's personal telephone conversations. Although the inmate or pretrial detainee here could not, of course, have an expectation of *complete* privacy in his telephone calls — he knows that his conversations are being recorded by prison officials — he could expect that the recordings of his calls would be used only for the purpose for which they were recorded, and the subjective prong is therefore satisfied. As for the objective prong of the inquiry, an inmate's or pretrial detainee's expectation that the recordings of his telephone calls will not be turned over to other government agencies absent a valid penological interest is certainly something that "society" would also recognize "as reasonable." *Commonwealth* v. *Blood, supra.* See *Commonwealth* v. *Buccella, supra.*[15]

Pretrial detention is suffered primarily by those who cannot afford to post bail.[16] It is those Commonwealth residents who are the most economically deprived who must face incarceration before trial; their wealthier counterparts suffer no such

[15]The court cites to two Federal cases interpreting Fourth Amendment challenges to the use of a defendant's pretrial statements recorded in prison in evidence at trial. *Ante* at 688. Reliance on those cases is not persuasive. We are not dealing here with evidence at trial, as do those cases. The cases do not appear to concern grand jury subpoenas, and there is nothing in them to suggest that prosecutors reviewed months and months of recordings in the unrestrained manner sought here, with no judicial supervision. Most important, those cases do not reflect the careful balancing that this court has established between the public interest in grand jury investigations of alleged criminal conduct and the art. 14 rights of Massachusetts residents "to be free from unreasonable intrusions on their privacy." *Commonwealth* v. *Doe*, 408 Mass. 764, 771 (1990), and discussion *infra*.

[16]"The individual costs of pretrial incarceration fall most heavily, of course, on the underprivileged and indigent. A very high percentage of pretrial inmates are incarcerated because they cannot even post relatively modest cash bail." S.A. Saltzburg & D.J. Capra, American Criminal Procedure: Adjudicative 933 (8th ed. 2007). In this Commonwealth, pretrial detention for reasons other than the financial inability of an individual to post bail is severely constrained. See, e.g., G. L. c. 276, § 58A (1), (3) (providing Commonwealth may move for order of pretrial detention "based on dangerousness" where defendant is charged with crimes containing certain elements, and that pretrial detention on such basis may be granted where judge "finds by clear and convincing evidence that no conditions of release will reasonably assure the safety of any other person or the community").

deprivation. Telephone calls by a poor suspect, who may later be determined to be innocent, may be the only means by which he or she can communicate with a child or parent or loved one or with a pastor or psychotherapist.[17] All of those conversations — however intimate — may now be canvassed by any prosecutor with *no* showing that there is any connection between the prosecutor's unfettered eavesdropping and any legitimate function of the grand jury. See discussion, *infra*. To conclude, as the court does today, that these suspects retain "no" privacy interest in their conversations is contrary to the established jurisprudence of this court. See *Commonwealth* v. *Blood, supra* at 70 (intrusions that threaten privacy of "our most cherished possessions, our thoughts and emotions," are "peculiarly intrusive upon that sense of personal security which art. 14 commands us to protect"); *id.* at 69, quoting *Olmstead* v. *United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting) (like Fourth Amendment, art. 14 was "intended by its drafters" to protect individuals in " 'their beliefs, their thoughts, their emotions and their sensations' by conferring, 'as against the government, the right to be let alone — the most comprehensive of rights and the right most valued by civilized men' "). I cannot therefore agree with the court's broad pronouncement that a pretrial detainee "has *no* actual, objectively reasonable expectation of privacy in the recorded telephone conversations" (emphasis added). *Ante* at 692.

I now turn to the issue of the grand jury subpoena, first as it pertains to pretrial detainees. Because a pretrial detainee retains significant art. 14 privacy rights in his personal telephone conversations, I cannot accept the court's holding that those rights "must be given little, if any, weight."[18] *Ante* at 692. The court is, of course, correct that "[m]any" records that may validly be

---

[17]Children, too, can be detained prior to trial if they are unable to furnish bail. See G. L. c. 119, § 68. Thus, poor incarcerated minors may face the prospect of having all conversations with their parents while they are awaiting trial recorded and turned over to a prosecutor for perusal.

[18]I focus here only on the privacy interests that I believe are protected by art. 14 because that is the primary focus of the briefing and argument. Thus, I do not address the important rights protected by the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights also implicated by providing recordings of a pretrial detainee's telephone conversations to the grand jury.

subject to a grand jury subpoena may implicate privacy interests. See *id.* But the court's cursory discussion of the permissible scope of a grand jury subpoena does not do justice to the interests at stake here. At minimum, a pretrial detainee's important privacy interests merit closer judicial scrutiny of any grand jury subpoena than the court's decision today will permit.

It is beyond cavil that a grand jury has "broad authority" to conduct its inquiries. See *Commonwealth* v. *Doe,* 408 Mass. 764, 768 (1990). But a grand jury may not "override" the constitutional rights of any individual. *Id.* Constitutional rights to privacy protected by the Fourth Amendment and art. 14 are among those rights on which the lawful exercise of a grand jury subpoena may be conditioned. See *United States* v. *Calandra,* 414 U.S. 338, 346 (1974) (grand jury are "without power to invade a legitimate privacy interest protected by the Fourth Amendment"). See also *Commonwealth* v. *Cote, supra* at 833-836 (analyzing claim that use of grand jury subpoena to acquire telephone message records violated art. 14).[19] A grand jury is "an appendage, a branch, an integral part of the court acting under the authority of the court." *Id.* at 831, quoting *Matter of Pappas,* 358 Mass. 604, 613 (1971), aff'd sub nom. *Branzburg* v. *Hayes,* 408 U.S. 665 (1972). It is subject to judicial supervision, inter alia, to prevent "excessive or unnecessary interference with the legitimate interests of witnesses." K.B. Smith, Criminal Practice and Procedure § 16.9, at 12 (3d ed. 2007).

In view of the significant art. 14 rights at stake, I would not permit every prosecutor to have unfettered and unsupervised access to all telephone recordings of every pretrial detainee, minor or adult, regardless of the circumstances. At minimum, a grand jury subpoena of information must be reasonable. *Commonwealth* v. *Doe, supra* at 768, citing *Hale* v. *Henkel,* 201 U.S. 43, 76 (1906) (grand jury "may not issue unreasonable orders to produce documents"); 1 S.S. Beale, W.C. Bryson, J.E. Felman, M.J. El-

_____

[19]In many States, statutes — often founded on the protection of privacy interests — limit the extent of a grand jury subpoena's reach. See 1 S.S. Beale, W.C. Bryson, J.E. Felman, M.J. Elston, & K.E. Yanes, Grand Jury Law and Practice §§ 6:7-6:8 (2d ed. 2008), and authorities cited. For example, in Massachusetts, an unemancipated minor who lives with a parent "shall not testify before a grand jury . . . against said parent." G. L. c. 233, § 20, Fourth.

ston, & K.E. Yanes, Grand Jury Law and Practice § 6:3, at 6-19 (2d ed. 2008) ("Fourth Amendment imposes a reasonableness requirement on subpoenas duces tecum, and may impose some restrictions on the extent to which subpoenas can constitutionally call for private, personal documents"). The subpoena in this case seeks recordings of every telephone conversation, no matter the recipient, over a six-week interval. Pretrial detainees can, of course, spend months or years incarcerated before trial, so the temporal scope of subpoenas for all telephone recordings of a pretrial detainee in another case may be even greater than six weeks. But the court's decision leaves prosecutors free to eavesdrop on every conversation of any pretrial detainee for any length of time. Moreover, although this court has declined to rule that a parent can be required to testify before a grand jury against his or her child, see *Matter of a Grand Jury Subpoena*, 430 Mass. 590, 599 (2000) (legislative enactments demonstrate that "families serve a special role in society and deserve unique protections"; Legislature has indicated "special aim" to protect children accused of crime), today the court brushes aside any such concerns, again leaving a prosecutor free to peruse the substance of all intimate conversations between a parent and child, even in those cases where the parent may have no effective means of communicating with his or her child except by a telephone call.

The case of *Commonwealth* v. *Doe, supra,* is instructive. The case concerned a grand jury's request for an order to require a person to appear in a lineup before witnesses in the case, and this court sought to balance the constitutional rights of a suspect with the legitimate functions of a grand jury. Consistent with the ruling in that case — to ensure that a summons is reasonable, that fundamental privacy rights are adequately protected, and "that the prosecutor and grand jury are acting in good faith" — I would require, "under the common law and our general superintendence authority," the Commonwealth to make a "minimal factual showing" sufficient to permit a judge "to conclude that there is a reason for" a subpoena that is "consistent with the legitimate function of the grand jury." *Id.* at 770, quoting *Matter of Kelley*, 466 A.2d 707, 707 (D.C. 1981). I would condition the granting of judicial approval of any subpoena of a

pretrial detainee's private telephone conversations on a showing of reasonable suspicion and would remand this case for a judicial hearing to determine, among other things, whether the subpoena here has exceeded the bounds of reasonableness and is consistent with the legitimate function of the grand jury. See *Commonwealth* v. *Doe, supra* at 768-770 (requiring showing of reasonable suspicion to support grand jury's power to seek order; standard of reasonableness should guide judge's decision).[20]

As to a grand jury subpoena seeking the records of telephone calls of a convicted inmate, in my view the considerations articulated in *Commonwealth* v. *Doe, supra,* apply with equal force and require the interposition of the judiciary to evaluate the subpoena in light of the competing interests at stake. The nature of the inquiry into reasonableness will be different where it concerns telephone records pertaining to a convicted inmate rather than a pretrial detainee. For example, given the length of time for which many convicted individuals are incarcerated, concerns about overbreadth and scope might assume more prominence for convicted inmates, while concerns about the inmate's diminished privacy interests might weigh less heavily. Other concerns, such as the prohibition on using a grand jury subpoena to prepare a pending indictment for trial, see note 5, *supra,* will apply to both pretrial detainees and inmates.

It bears repeating that this country has long abandoned an inquisitorial system in which the government is constrained by no bounds in prosecuting possible criminals. For this reason, this court has consistently sought to maintain the appropriate balance between the "public interest in the investigation by grand juries of criminal conduct" and the rights of individuals "to be free from unreasonable intrusions on their privacy." *Commonwealth* v. *Doe, supra* at 771. A decision from this court that permits unconstrained eavesdropping by prosecutors on intimate personal conversations with *no* requirement that a prosecutor demonstrate to an impartial tribunal that the eavesdropping is reasonable and

---

[20]In *Commonwealth* v. *Doe,* 408 Mass. 764, 769 (1990), the court declined to extend its conclusion regarding reasonable suspicion "generally" to encompass grand jury requests for orders "directed to an individual concerning nontestimonial evidence." I share the court's reluctance to impose a requirement of reasonable suspicion for subpoenaed documents. Here the recordings are testimonial and implicate fundamental art. 14 rights. The *Doe* protections should be fully operative.

consistent with the legitimate functions of a grand jury is a decision that represents a sharp departure from the precedents of this court setting a different path. I would adhere to those precedents. I respectfully dissent.

CORDY, J. (dissenting in part). I join the dissenting opinion of Chief Justice Marshall to the extent that it concludes that pretrial detainees (juvenile or adult) retain a privacy interest, protected by art. 14 of the Declaration of Rights of the Massachusetts Constitution, in recordings of their otherwise private conversations, even though they are made by prison officials after notice and in furtherance of a valid penological purpose. That privacy interest includes an interest in the dissemination of the substance of those conversations to persons and government agencies beyond what is necessary to further the limited purpose (institutional security) that justified their interception. I also agree that in order to obtain the recordings of such conversations for the use of the grand jury, the Commonwealth should be required to make a factual showing (albeit ex parte) sufficient to permit a judge to conclude that there is a reason for the subpoena that is consistent with the legitimate function of the grand jury, and that such subpoena is reasonable in scope.